Blowers v. Sturtevant.

## BLOWERS vs. STURTEVANT.

If a wife leave her husband without just cause, he is not answerable for her support. But if she offer to return, and he refuse to receive her, his liability is revived. *Per* BRONSON, C. J.

If he turn her out of doors, or drive her away by cruel treatment, she carries a credit with her for her necessary support. *Per* BRONSON, C. J.

In an action against the husband for necessaries furnished to the wife while living

separate from him, the plaintiff must show affirmatively that the separation took place in consequence of his misconduct. It is not enough that it appear that there were quarrels and personal conflicts between them, unless it be shown that the husband was the offending party.

And where it was proved that the husband had used violence towards his wife on an occasion five months before their separation, and there had been other difficulties and quarrels, but when she left his house it was not from any apprehension of ill treatment, but in order to make a visit; and she refused to return unless his relatives who lived with him would go away; *held*, that he was not liable for her board furnished by her father during such separation.

ERROR to Saratoga C. P. Sturtevant sued Blowers before a justice in November, 1844, and declared, among other things, for boarding the defendant's family. The plaintiff was a blacksmith, and the defendant a carpenter, and there had been accounts and dealings between the parties in the way of their respective trades; but nothing is in question on this writ of error but the plaintiff's claim for boarding the defendant's wife and child. The defendant's wife, Eliza, left his house on the 16th of May, 1844, with her child, which was less than a year old, saying she was going visiting to her uncle Horace's. When she spoke of going, the defendant told her, if she would wait a few days, he was going down, and would help her carry the child; and that she had better not go down then, for they had the measles down there. But she went to her uncle's; and after about three days went to the plaintiff's house, he being her father; and there she remained until the 21st of November following, when this action was brought. The board of the wife and child was proved to be worth twelve shillings a week.

Phebe Blowers, who proved the foregoing facts about the separation, also testified that she was the defendant's mother, and had lived with him over seven years. "She never saw the defendant have his wife on the floor but once, and that was five months before she left; but they had had little squabbles like. Eliza got mad about a cradle, that made her go away. Defendant said that the child of Jane's had a right to sit in the cradle if it wanted to. This was about the time that she left. Never heard defendant use any obscene language to Eliza:

does not remember of any other quarrels. Defendant is 30 years old." Ira Gray testified that on one occasion, but when it was does not appear, the defendant and his wife were at the witness' house, and defendant told his wife that she could not oed and board at his house in friendship. Josiah Mills heard plaintiff say, that Eliza was not going back to defendant's again until she was better used ; and that he, the plaintiff, had advised her to go back. Defendant was present. Peleg Andrews heard the plaintiff say that Eliza never should or would return and live with the defendant again as long as he had potatoes to keep her upon.

Mrs. Gray testified that when the wife left, she called a' witness' house, and said she was going down to uncle Horace's visiting, and should return the day but one afterwards. After the wife went away, Mrs. Shaw heard a conversation between her and her husband ; they both declared that they had nothing against each other, and Eliza said she would go back home, if he would get rid of Jane and his mother. In September before the trial, William Blowers heard Eliza say, there was no difficulty between her and defendant; and if the defendant would send the youngest of Jane's children away, she would put up with the other boys and the mother. Caleb Graham heard Eliza say she should not go back until defendant asked her to. The defendant posted a written advertisement upon the bridge forbidding all persons trusting or harboring his wife ; but at what time did not appear. He has the means of supporting his wife.

On this proof, and evidence concerning the accounts and dealings of the parties, the justice gave judgment for the plaintiff for $14,50, which included the plaintiff's claim for boarding the defendant's wife and child. On certiorari the C. P. affirmed the judgment. The defendant brings error.

*B. C. Butler,* for the plaintiff in error.

*W. A. Beach,* for the defendant in error.

*By the Court,* Bronson, Ch. J. Our laws do not favor separations between husband and wife. So long as they live together, if the wife purchase necessaries for herself or the family, the law will presume that she had the authority of her husband for doing it. But after they part the law makes no such presumption; and it lies on those who would charge the husband, to show that the separation took place in consequence of his misconduct. (*Clifford* v. *Laton,* 3 *C. & P.* 15.) If the wife leave her husband without just cause, and go to her father's house, or any where else, the husband is not answerable for her support. (*McCutchen* v. *McGahay,* 11 *John.* 281.) But in such a case, if the wife offer to return, and the husband refuse to receive her, his liability for necessaries furnished the wife is thereby revived. (*McGahay* v. *Williams,* 12 *John.* 293.) If the husband turn his wife out of doors, or drive her away by cruel treatment, she carries a credit with her; and the husband must answer for her support. (*Houliston* v. *Smith,* 3 *Bing.* 127; 2 *Car. & P.* 22, *S. C.; Hodges* v. *Hodges,* 1 *Esp.* 441; *Boulton* v. *Prentice,* 1 *Selw. N. P. by Wheaton,* 276, *ed. of* '39.) In *Harwood* v. *Heffer,* (3 *Taunton,* 421,) the husband had treated his wife with great cruelty, though without creating any apprehension for her personal safety. But he brought a profligate woman into the house, with whom he cohabited, and placed her at the head of his table, telling his wife that if she did not like to dine there, she might dine in her own chamber. And yet it was held, that the plaintiff, who had furnished necessaries for the wife after she had been thus driven out of the house, could not recover against the husband. I agree with Best, Ch. J., in *Houliston* v. *Smith,* that the doctrine of that case cannot be law in a christian country. But still, where there is no such gross indecency on the part of the husband, all the cases agree, that there must be just ground for apprehending personal violence, before the wife can voluntarily go away, and charge the husband with her support.

In this case, the demand arose after the wife had left her husband; and the burden was upon the plantiff of showing that the separation had been brought about by the improper conduct

of the husband. There is no pretence that he was guilty of any such indecency as was chargeable upon the husband in *Harwood* v. *Heffer*, or of any thing else of the like kind : and the judgment of the justice must be supported, if it can be supported at all, on the ground that the wife had just cause to apprehend personal violence from her husband. The only testimony to show improper treatment on his part, is that which was given by his mother ; who, from a seven years' residence in the family, would be likely to know how he had conducted. If we put the most unfavorable construction upon what the witness says, the defendant had once had his wife on the floor by force. This is bad enough. But how the quarrel commenced, or which party was most in fault concerning any of their " little squabbles," does not appear. If there was violence on one occasion, there is no proof that there was on any other ; nor is there any reason to believe that the wife left from any apprehension of her personal safety. It must be remembered that the affair of which the witness speaks, occured five months before the wife went away : and without any subsequent wrong on the part of the defendant, it is too much to infer that the separation took place through any fear of violence. And besides, there is decisive evidence to show that such was not the fact. The defendant did not speak unkindly to his wife when she went away ; and she professed to leave for the purpose of visiting her uncle. On the way, she said the same thing to Mrs. Gray ; and told her she should return in two days. And she did, in fact, go to her uncle's, where she remained three days before going to her father's house. Although she was angry with her husband for allowing Jane's child to sit in the cradle, it is highly probable that she intended to return, until that purpose was changed by some new influence. But whatever may have been her intention at the time of leaving, it is evident that her feelings were not so much against the defendant, as they were against his family friends. She was angry because Jane's child was allowed to sit in the cradle. The husband and wife afterwards had a conversation in presence of Mrs. Shaw, in which both declared that they had nothing against

each other ; and she said she would go back, if he would get rid of Jane and his mother.   And in September, four months after the parting, another witness heard her say, that there was no difficulty between her and the defendant; and if the defendant would send the youngest of Jane's children away, she would put up with the other boys and the mother.   It is impossible to maintain upon the evidence that she left through fear of personal injury from the defendant.   The truth evidently is, that she had taken a great dislike—and so far as appears, without cause—to the other inmates of the family ; and particularly to Jane's youngest child.   She had no difficulty about returning so far as the defendant was concerned : but at the first she made it a condition that the defendant should get rid of Jane and his mother.   And although she afterwards abated something of this demand, she made it a *sine qua non* that Jane's youngest child should be sent away.   Upon such a case as this, if the father, or any one else, chooses to entertain the wife, it must be done at his own expense ; and not in the expectation of charging the husband.   We cannot hold otherwise without making a new precedent.

Judgment reversed.