J. DENNISON POTTER *vs*. STEPHEN B. VIRGIL.

When a physician is employed to attend upon a sick person, his employment
continues while the sickness lasts; and the relation of physician and patient
continues, unless it is put an end to by the assent of the parties, or is revoked
by the express dismissal of the physician.

The plaintiff was employed, as a physician, to attend upon the defendant's wife,
and while in attendance upon her, and during the continuance of her sick-
ness, she was secretly, and without the knowledge or consent of the defen-
dant, removed to her father's house; where the plaintiff, at her request,
continued to attend her. The defendant, though informed that the plaintiff
was still visiting his wife, and intended to continue his visits, did not forbid
his further attendance. *Held*, that the contract of employment was not re-
voked, and the plaintiff continued to be the physician of the wife, after her
removal to her father's house; and that the defendant was liable to pay for
his services as such. .

APPEAL from an order denying a motion for a
new trial,

The action was brought to recover for medical services
and attendance. It was tried at the Onondaga circuit,
in October, 1874, before Justice HARDIN and a jury,
when a verdict was directed in favor of the plaintiff, for
$70.20. A motion was made, upon the minutes, for a
new trial, which was denied.

The plaintiff was a physician, and attended the defen-
dant's wife during a sickness, at his house, for which
service he was fully paid. The wife was taken from the
defendant's house secretly, and without the knowledge
of the defendant, by her father, and removed, in the
night, to his house — a distance of some miles from the
defendant's residence — where she continued sick, and
was attended by the plaintiff. This action is for ser-
vices rendered after the removal of the defendant's wife
from his residence, as above stated.

The questions made on the hearing, and upon which
the motion for a new trial was made, will sufficiently
appear in the opinion of the court.

*Geo. N. Kennedy,* for the appellant.

*W. C. Ruger,* for the respondent.

*By the Court,* E. DARWIN SMITH, J.   The direction at the circuit to the jury to find a verdict for the plaintiff for the amount of his bill for services was based upon the single ground that the plaintiff, having been confessedly employed as a physician to attend upon the defendant's wife, was entitled to recover for his attendance upon her during her entire sickness ; and that the relation of physician and patient, arising upon his original employment, continued till her decease.

No question was made, at the trial, that the services of the plaintiff, commencing in January, 1873, and continued by constant attendance from day to day till the 10th day of August afterwards, at the defendant's house, were upon his employment, and that such services had been paid for by the defendant, at the commencement of this action.   On the 10th day of August, the defendant's wife, it appears, was removed from his house without his knowledge or consent, by her father to his house, and the services of the plaintiff, for which this action was brought, were rendered at the residence of the said father of the defendant's wife.

In taking the case from the jury, and in refusing the request of the defendant's counsel to submit to them the questions whether the plaintiff was in the employment of the defendant under an expressed and implied engagement on his part, subsequent to the 10th day of August, 1873, or after the removal of the defendant's wife from his house, the circuit judge necessarily assumed that there was no conflict in the evidence, or no such evidence as would justify a verdict for the defendant upon the point on which the decision turned.   The rule of law applicable to the case on this question, we think, was

correctly stated by the circuit judge in his decision, in disposing of the case.

It was, in substance, that when a physician is employed to attend upon a sick person, his employment continues while the sickness lasts, and the relation of physician and patient continues unless it is put an end to by the assent of the parties, or is revoked by the express dismissal of the physician. The defendant's wife continued sick after her removal to her father's house, and the physician continued to attend her there till the day of her death, on the 19th of September, after such removal.

On the question whether the defendant ever dismissed the physician, or forbade his further attendance upon his wife, there was at the trial no dispute, and no evidence.

The defendant certainly knew that the plaintiff was continuing his visits, more or less, to his wife after her removal to her father's.

The plaintiff testified that soon after the defendant's wife arrived at her father's house he visited her, at her request, and continued to attend her until her death.

On the next day after her removal the defendant called upon the plaintiff, as he testified, to learn what he knew about his wife, and her condition, and the plaintiff told him, frankly. On this occasion the defendant asked the plaintiff if he had been to see her, and the plaintiff told him he had ; also how he found her, and the plaintiff told him. The defendant also asked him if he was going there to see her again, and the plaintiff told him he should, on Tuesday, which was the next day (Monday being the 11th of August.)

The defendant's account of this interview is somewhat different. He testified that he called at the doctor's house, and had considerable conversation with him about the occurrence ; said : "I told him they had taken her off unbeknown to me, and asked him if he

Potter *v.* Virgil.

had been down to see her, and he said he had; I asked him how he found her, and he said comfortable; I asked him when he was going there again, and he said he did not know — in two or three days." The defendant testifies, further, that he met the plaintiff on Thursday afterwards, the 14th, at his wife's father's, which was six miles distant from the defendant's place of residence. On this occasion the defendant desired to see his wife, and was refused permission to do so, by her father, who referred him to the doctor. The defendant states that on this occasion the doctor came out of the house to the gate, where he was standing, and he, the defendant, asked him "if he had seen her? he said he had; he said she was comfortable, just about the same she was up to your house."

On the same evening, the defendant testifies that he saw the plaintiff at his house in Delphi, and asked him how she was, when he left. He said comfortable. "I asked him when he was going down again; he said in two or three days." The testimony shows, clearly, that in these interviews between the plaintiff and defendant the latter was informed that the plaintiff had visited and was visiting his wife after her removal to her father's, and intended or expected to continue such visits.

No reason or occasion is or was suggested for his visits to a sick person at a distance of six miles from his home, except in his professional capacity.

The assumption of the circuit judge that the plaintiff still continued to be the physician of the defendant's wife after her removal to her father's house, with the knowledge and assent of the defendant, or at least not forbidden and the contract of employment not revoked, was correct, and well founded.

If in these interviews between the plaintiff and defendant, or on any other occasion after the removal of his wife from his house, the defendant had forbidden the further attendance of the plaintiff upon his wife, and the

plaintiff had persisted in doing so, and had brought this action to recover for his services after such prohibition, a very different question would have arisen for our decision.

Upon this branch of the case the circuit judge would have doubtless been bound to submit the evidence to the jury, upon the question whether the abandonment by the defendant's wife of her home, and her removal to her father's house was, under the circumstances of the case, justifiable and proper.

A wife clearly cannot abandon her husband's house and home and bind him by contracts for necessaries, provisions, clothing and medical attendance, except upon clear and satisfactory proof of gross abuse, neglect and misconduct on the part of her husband. (*Blowers* v. *Sturtevant,* 4 *Denio,* 46. 2 *Kent,* 146. *Board of Supervisors of Monroe Co.* v. *Budlong,* 51 *Barb.,* 493.)

The decision of the circuit judge, we think, was correct, and the order denying the motion for a new trial should be affirmed.

Order affirmed.

[FOURTH DEPARTMENT, GENERAL TERM at Syracuse, January, 1876. *Mullin, E. D. Smith* and *Gilbert,* Justices.]