HARRIET C. PIERCE, Administratrix, etc., Appellant, v. NORMAN PIERCE, Respondent.

*Marriage settlement — not performed by husband — does not release dower — Separation by wife from husband — liability of husband for moneys thereafter expended by wife in her support.*

When a man, in contemplation of marriage, agrees to make a settlement on his wife, in consideration of which she agrees to relinquish her rights in his property at his decease, and he fails to make the settlement, the widow is not barred of any right which she might have asserted if no such agreement had been made.

When a wife leaves her husband, on account of his ill-treatment, and lives separate and apart from him for a period of eight years, she has no claim against him or against his estate for moneys expended by her during that period for her support and maintenance.

In such a case she must obtain a limited separation and an allowance for her support, or she must purchase such articles as are necessary to her support and maintenance on his credit.

APPEAL from a decree of the surrogate of Delaware county upon the final accounting of the appellant as administratrix of Nathan Pierce, deceased.

The principal question presented upon the appeal related to the effect of an ante-nuptial agreement entered into between the appellant and her deceased husband, and to a claim made by her for moneys expended by her in her support and maintenance during a period of eight years while she was living apart from him, having left him, as she alleged, on account of his ill-treatment of her.

*Gilbert & Maynard*, for the appellant.

*Gleason & Murray*, for the respondent.

LEARNED, P. J.:

By the ante-nuptial agreement Nathan Pierce, the intestate, agreed to pay or cause to be paid, to Harriet C. Pierce, his intended wife, if she survived him, $500, for her sole and separate use. In consideration of the $500 "paid to her," she covenanted and agreed that the money so assigned to her should be in full satisfac-

tion of her dower, and should bar her from claiming the same, and that she would not claim any share in his personal estate, unless some part were given her by his will, or some act done subsequently to the execution of that agreement.

Nathan Pierce died intestate; never paid his wife the $500, and made no settlement of the same upon her.

When a man, in contemplation of marriage, agrees to make a settlement on his wife, in consideration of which she agrees to relinquish her rights in his property at his decease, and he fails to make the settlement, the widow is not barred of any right which she might have asserted, if no such agreement had been executed. (*Bliss* v. *Sheldon*, 7 Barb., 152. This case is affirmed, 8 N. Y., 31.) The doctrine is laid down by the text books. (Clancy's Married Women, 103; 1 Greenleaf's Cruise, p. 203; Tyler on Inf. and Coverture, 465.)

In the case above cited the ante-nuptial agreement was to give and assure, by will or otherwise, fifty dollars per year during the natural life of the intended wife, and the use of a certain part of the house and garden. This was to be received in lieu of dower, or any portion of the husband's estate. The husband's will gave an annuity to her, *only during widowhood*. It was held that the ante-nuptial agreement did not preclude her from claiming the property directed by statute to be inventoried and set apart for her use. And in affirming the judgment the Court of Appeals said: " It is idle to talk of the wife being bound by an agreement which the husband in his lifetime virtually repudiated."

This same doctrine may be found in *Howman* v. *Corie* (2 Vern., 190); *Pyke* v. *Pyke* (1 Ves., Sen., 376); *Mitford* v. *Mitford* (9 Ves., 87).

In *Hastings* v. *Dickinson* (7 Mass., 153) the wife was held not to be barred by her covenants from claiming dower, when the husband had not fulfilled the ante-nuptial agreement. In *Gibson* v. *Gibson* (15 Mass., 106) such covenants were held not to operate as estoppel. In *Vance* v. *Vance* (8 Shepley, 364) the same rule was applied, both to dower and to the distributive share of the personal estate.

In *Woodward* v. *Woodward* (5 Sneed, 49) the husband's estate was sufficient to enable the ante-nuptial agreement to be carried

out. But inasmuch as the husband had not in fact carried out the agreement, it was held not to be binding on the widow.

It is not the promise, or the executory covenant, of the intended husband which the intended wife accepts in lieu of her future interests in his estate, but it is the actual vesting in her of property in the place of that which the law will give her. Otherwise, as in the present case, the wife would lose her dower and distributive share, and become simply a creditor of the estate. The intestate, Nathan Pierce, never did pay, or cause to be paid, to Harriet C. Pierce, the sum agreed upon. He never secured it in his lifetime, and he did not even make a provision for it by will. As he " virtually repudiated the agreement," she is not bound to accept its terms. She is therefore entitled to the distributive third of the estate and to the $150 ; and of course is not entitled to the $500.

The administratrix appears to be charged with interest on moneys in her hand from October 10, 1870 ; she is credited with the $150, as of the time of filing the account, February 21, 1873. She should be credited also with interest on this $150, from October 10, 1870.

The widow claims for board, clothing, medical attendance, and other necessaries furnished for herself, during eight years, when she was living separate from her husband ; compelled to leave him as she claims by his ill treatment. The claim was properly disallowed by the surrogate. The so-called married women acts have not changed the law of husband and wife, except to the extent expressed or necessarily implied. The decision in *Adams* v. *Curtis* (4 Lans., 164), was only, that a married woman, having worked for a firm of which her husband was a member, might recover. The husband did not defend. This does not show that a married woman, living separate from her husband, may sue him or his estate for her board and necessaries. If she has been ill treated she has other remedies. She may obtain a limited separation and an allowance for support. (2 R. S. [m. p.], 146.) She may purchase necessaries on her husband's credit, if he has turned her out of doors, or the like. (*Blowers* v: *Sturtevant*, 4 Denio, 46.) If she takes neither of these courses but prefers to support herself while living separate from him, she has no claim against him for the money thus expended. It is, in that case, reasonable to infer that she

acquiesced in the separation, and that it was not altogether owing to his fault. It would be a dangerous principle to hold a man liable to his wife, for money expended on her own support, when she had been living separate from him for eight years, without taking legal proceedings for a separation, and without making purchases on his credit.

The views above expressed render it unnecessary to examine any of the questions as to the exclusion of evidence. The decree should be modified in accordance with these views; and neither party should have costs of this appeal.

Present — LEARNED, P. J., BOCKES and BOARDMAN, JJ.

Judgment modified, as stated in opinion of LEARNED, P. J., and to be settled by him.