THE PEOPLE OF THE STATE OF NEW YORK, Respondents, *v.* THOMAS H. PETTIT et al., Appellants.

To maintain an action upon a recognizance, given upon the conviction of a person as a disorderly person for neglecting to support his wife and children, it must be made to appear that subsequent to the giving of the bond the person has been guilty of such neglect; the conviction is not evidence of a subsequent breach of the condition of the recognizance.

The husband cannot be made a disorderly person and held amenable under the statute because he fails to comply with any condition in reference to support which the wife may see fit to impose; and the reasonableness of the conditions cannot be referred to the decision of a jury.

The husband has a right to select his own residence; and the support the statute was intended to secure is the necessaries of life, or such as the parties have been accustomed to, and the husband is able to provide.

In such an action it appeared that, at the time the recognizance was given the husband and wife were living separate and apart, he then offered to take his wife and children to his father's house where they had formerly lived and to support them as they had formerly been supported, but refused to support them elsewhere. They had occupied separate apartments, and there was no evidence that the apartments were not comfortable and the offered support proper and suitable. Defendant had no other house and had no property of his own. She declined to go with him or to allow him to take the children, giving as a reason that she would not live in the house with his parents, as it was not a suitable place because his father was intemperate and abusive. *Held*, that the evidence failed to establish a breach of the recognizance.

If the husband offers to support the wife if she will live with him, and she refuse because of alleged fear of personal violence, to make the husband amenable to the statute there must be a reasonable and substantial apprehension of violence, based upon sufficient facts, to enable the court to see that it is well founded.

Statement of case.

*It seems*, that this summary statute was designed to enforce actual physical support only, not to interfere with the marital relations, and when such support is tendered the husband cannot be made liable under it, although he has been guilty of acts entitling the wife to an absolute divorce.

(Argued June 3, 1878; decided September 17, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiffs, entered upon a verdict and affirming an order denying a motion for a new trial.

The nature of the action and the facts are set forth sufficiently in the opinion.

*Wm. C. Ruger*, for appellants. The support offered by defendant Pettit being as good as he could afford there was no breach of the bond. (*Davis* v. *Davis*, 58 Barb., 130; *Perry* v. *Perry*, 2 Paige, 501; *Whispell* v. *Whispell*, 5 Barb., 217; 2 Kent's Com., 147; 1 Bishop on Mar. & Div., § 570; *Houleston* v. *Smith*, 3 Burgh., 187; *Ayer* v. *Ayer*, 16 Pick., 327; *Clement* v. *Mattison*, 3 Rich., 93; *Evans* v. *Fisher*, 5 Gilm., 569; *Howard* v. *Whitstone*, 10 Ohio, 365.) The husband had a right to choose the place where he was willing to support his wife and family. (*Walker* v. *Lighton*, 31 N. H., 111; *Rumney* v. *Keyes*, 7 id., 578; *Kimball* v. *Keyes*, 11 Wend., 33; *Child* v. *Hardyman*, 2 Str., 875; *Bolton* v. *Prentice*, id., 1214; *Blowers* v. *Sturtevant*, 4 Den., 46.) There must be just grounds for apprehending personal violence before a wife can leave her husband and charge him with her support. (*Clifford* v. *Laton*, 3 C. & P., 15; *Harwood* v. *Heffer*, 3 Taunt., 421; *McCutchen* v. *McGahay*, 11 J. R., 281; *Bd. Suprs. Monroe Co.* v. *Budlong*, 51 Barb., 493; *Flanagan* v. *Overseer, etc.*, 8 E. & B., 450.)

*A. L. Johnson*, for respondent. Upon proving the execution of the bond and a neglect to support the wife from that time to the commencement of this action, a cause of action was made out. (2 R. S. [5th ed.], 904, § 3.) It was not

necessary to constitute a breach of the bond that the town or county should have aided Pettit's family. (2 R. S. [5th ed.], 903, § 1; Laws 1861, chap. 127, § 1; 3 Hun, 416.) The neglect of the husband to provide for the wife in a suitable manner after the execution of the bond was a breach of its condition. (2 R. S. [5th ed.], 904, § 3.)

CHURCH, Ch. J. This is an action upon a recognizance given by the defendant Pettit with sureties upon his conviction, before a justice of the peace, of being a disorderly person for neglecting to support his wife and children, under 1 R. S., 638. By section 3 of the act, it is declared that " the committing of any of the acts which constituted the person so bound, a disorderly person, shall be deemed a breach of the condition of such recognizance."

To maintain this action it was incumbent upon the plaintiff to establish that a breach had occurred, viz.: That subsequent to the giving of the bond, the defendant Pettit had been guilty of neglecting to support his wife and children. Upon a motion for a nonsuit, this point was distinctly made and overruled, and an exception taken, and this presents the most serious question in the case.

At the time the motion for a nonsuit was made, the evidence consisted mainly of the testimony of the wife. She stated that she left her husband voluntarily in December, 1872, ostensibly for the purpose of recruiting her health, that her husband was opposed to her leaving, and told her if she did go, not to return. The parties had been married several years, and had two children, one twelve years old, and the other an infant about a month old. They had resided most of the time in the house with the parents of the husband upon a large farm, but at the time of her leaving they were living in a hotel, a few rods distant, kept by the husband, but which was soon after rented, and the husband returned to reside with his father and mother. It is not claimed that the husband turned away his wife, and I do not regard it material, to inquire into their relative positions prior

to the conviction.   It appears that at the time of the execution of the bond they were living separate and apart, and it may be assumed that the correctness of the conviction cannot be attacked in this action upon the merits.   But the conviction is not evidence of a subsequent breach of the condition of the recognizance.   It is undisputed that on the day the recognizance was executed, the husband offered to take the wife and children to his father's house and support them there as they had before been supported, occupying a separate portion of the house, and a brief correspondence soon after corroborates the oral evidence.   The bond was given March 6, 1873, and on the twenty-fifth of March the wife wrote to defendant as follows :  " I want you to come immediately, or send some one with means to pay for my support, and the support of your little children from March sixth up to the present time, or I shall prosecute the bail bonds," to which he made the following answer, on the twenty-ninth, and delivered it to her in person :  " I am, and at all times have been ready and willing to support you at home, but not while you are absent therefrom against my wishes and consent."

She declined to go with him, or to allow him to take the children, and the reason she gave was that she would not live in the house with his parents.   She testified, " I declined to go to the house with his father and mother.   I would not live in the family with them."   She further testified, " I stated further in this conversation that it was not a suitable place because his father was intemperate, and very abusive, he abused everybody in the house.   I told him it was not a proper place to take me and the children.   I don't remember that I did state anything why it was not proper."

This is the substance of the evidence given on the part of the prosecution to establish a breach of the recognizance, and it is manifest that it falls far short of being sufficient. There was no pretense in this evidence that the apartments were not comfortable, and the offered support proper and suitable.   It appeared that the defendant was an only son ; that the father, or mother owned the farm of 275 acres ;

that the house was large, and no other occupants but the parents and hired help, and that defendant had no other house, and was not worth any property of his own. Nor was it claimed before the motion for a nonsuit was made that the wife had been cruelly treated, or that her health or life was in danger from personal violence. The reason for declining, in effect, was, that the parents were disagreeable, and the father intemperate and abusive. I assume, what is fairly inferable from her evidence that the residence in the same house with the parents was unpleasant, and we may assume further that they and the husband were in fault. But this does not establish that the husband refused or neglected to maintain his wife. The statute is not a substitute for an action of divorce, it was not designed to settle marital controversies nor to furnish relief for violations of marital obligations except in the single particular of requiring a support or maintenance. The statute is summary and highly penal, and must be strictly construed. The defendant is charged with neglecting to support his wife. Does he neglect, when he offers to support her, and no question is made of the good faith of the offer ? As well might it be said that he neglected to support his wife if she had returned with him, because her surroundings were disagreeable. A husband cannot be made a vagrant and a disorderly person, and held amenable to this statute by not complying with any condition in respect to support which the wife may see fit to impose, nor is it proper to refer the reasonableness of the conditions to the decision of a jury. She exacted in this instance a separate house. Why might she not a particular kind of a house in a particular neighborhood, or impose other conditions ? The husband has a right to select his own residence, and the support which this statute was intended to secure is, the necessaries of life, or such as the parties have been accustomed to, and the husband is able to provide. The plaintiffs were bound at least to establish such a case as would entitle a third person to recover against the husband for necessaries furnished the wife. The rule in such cases is

that during cohabitation the assent of the husband is pre-
sumed, but if they are living apart the burden is upon the
person furnishing the necessaries to show that the circumstan-
ces are such as to render the husband liable.    (11 J. R., 281;
*Blowers* v. *Sturtevant*, 4 Den., 46; Bishop on Mar. & Div.,
§§ 569, 570; 3 Car. & P., 15.)    The case stands as though the
wife had voluntarily separated from the husband.    Whatever
force may be given to the conviction when the husband made
the offer to support her, the question is, making the liability
of the husband to a third person for necessaries furnished,
which is the most favorable view for the plaintiff, the test
whether the wife was justified in refusing to return, or in
other words whether she would have been justified in leaving
her husband.    Mr. Bishop in his work before quoted, after
reviewing the authorities, says : " The true view of this
matter plainly is that when the wife is away without the
husband's consent he is not to be charged with necessaries
furnished her, unless he has committed acts justifying a suit
against him for divorce, either a divorce from the bond of
matrimony, or from bed and board."    In *Blowers* v. *Sturte-
vant* (4 Denio, 46), it was proved that the husband had used
violence toward his wife on an occasion five months before
their separation, and there had been other difficulties and
quarrels, but when she left his house it was not from any
apprehension of ill-treatment, but in order to make a visit,
and she refused to return unless his relatives who lived with
him would go away, and it was held that he was not liable
for her board furnished by her father during such separation.
BRONSON, J., in delivering the opinion after properly disap-
proving of *Harwood* v. *Heffer* (3 Taunton, 421), where the
husband brought a profligate woman into the house and
placed her at the head of the table, said : " But still when
there is no such gross indecency on the part of the husband,
all the cases agree that there must be just ground for appre-
hending personal violence before the wife can voluntarily go
away and charge the husband with her support."    At the
time the motion for a nonsuit was made there was no evi-

dence that the wife was in danger of personal injury, or that
she apprehended any.   The most that can be said is that the
presence of the parents rendered her home unpleasant, and
the habits of the father were objectionable.   There is no
authority for holding that these facts are sufficient to entitle
the wife to a divorce or separation from bed and board, and
the motion for a nonsuit should have been granted, and for
this error a new trial must be awarded.   It is proper to say
that subsequently, in the course of the trial, the wife gave
some additional testimony upon this point.   She testified
that she did apprehend personal injury, and that she was
afraid of her life.   She specified one occasion when the
father threatened to strike her with a chair, but she remained
there five years afterwards, and it is clear that she did not
leave, or remain away on that account.   It is a noticeable
feature of the evidence, that no charge of personal violence
or threats, or even abuse is specified against the husband,
nor that the husband was unable or unwilling to protect his
wife from any apprehended violence, real or fancied of the
father.   She testified " the true difficulty between he and I
was not that I didn't like him, that he was disagreeable, that
our tastes were not similar, I liked him when he behaved
himself."   It is not stated wherein he misbehaved.   Although
afraid of her life she said she was willing to live with her
husband separate from his parents, and as to the father she
stated that when he was sober " the old gentleman and I got
along well enough."   There was an attempt to prove
improper relations between the defendant and a hired girl,
but it failed.   It seems that at some period a girl who was
a relative of the husband worked there, and all that was
proved tending to show improper intimacy, was that they
slept up stairs, and the old people below, but it does not
appear that they occupied the same apartments, nor was
there any evidence of any improper acts between them.   I
do not think that all the evidence contained in the record
would be sufficient to entitle the wife to a decree of divorce
of any kind.   There must be apprehension of personal vio-

lence, and it must be reasonable and substantial, and based upon sufficient facts to enable the court to see that it is well founded. In England the rule of liability under a similar statute seems to be more restricted than the test above indicated. In *Flanagan* v. *Overseers of the Poor* (8 Ellis & Black, 450), it was held that ill usage sufficient to justify the wife in refusing to live with the husband was not sufficient to charge the husband under the statute, when he offered to take the wife home and support her. Lord Campbell, C. J., assumed that the circumstances were sufficient to entitle the wife to a decree of separation and sufficient to enable her to pledge his credit for necessaries, and yet inasmuch as he offered to support her, he could not under the statute be convicted of refusing, or neglecting to support her. He said : " But the magistrates appear to have supposed that because the wife might have reasonable ground for not going home to her husband, he was guilty of refusing to maintain her. Can he be said to have willfully refused or neglected to maintain her ? I think not, and I am of opinion that no past cruelty could justify the magistrates in coming to such a conclusion." Wightman, J., said : " This is clearly an attempt to enforce a separate maintenance in a case where the husband does not refuse to maintain his wife but is always ready to receive her. The magistrates consider that the wife on account of the apprehended ill usage is not bound to go and live with the husband, but that is very different from a refusal by him to maintain her." If a wife has legal grounds for a divorce that remedy affords ample opportunities to secure provision for support, and should be pursued. This summary statute was designed to enforce actual physical support only, not to interfere with marital relations, and when such support is tendered there is much force in the position that the husband cannot be convicted in this *quasi* criminal proceeding for refusing or neglecting to furnish it. There may be doubtless circumstances when the wife would be justified in refusing to go with the husband, and yet they would not be sufficient to entitle her to a

divorce. The instances cited by the learned judge in his charge supposing the husband offered to support his wife in a den of thieves or at a house of ill-fame, all would agree that not only would the wife be justified but it would be her duty to refuse to go to such a place, and such offers of support might not be a defense under the statute. If so it would be upon the ground I apprehend that this would not constitute an offer of support at all within any recognized legal or moral rule. Such offers would be regarded as a fraudulent attempt to evade the requirement of the statute. They are very different from the offers of support made in this case, and to leave to a jury in such a case to determine whether it was reasonable to refuse to accept the support tendered, would greatly enlarge the purview of the statute, from what was intended, and would be as unwise and dangerous as it is unprecedented. Suppose the husband had committed adultery, and the wife was entitled to an absolute divorce. She would have the right to remain away, and institute legal proceedings for a divorce in which she might obtain both temporary and permanent support, but if the husband offered to support her, would he be liable under this statute ? I think not. It would follow that a reasonable excuse may exist for not going home with the husband on request, and yet he be not amenable to this statute. The law in such a case has provided a more appropriate remedy, but it is unnecessary to pass upon the question definitely. In this case under the most favorable test no breach was established.

The judgment must be reversed and a new trial granted, costs to abide the event.

All concur, except MILLER and EARL, JJ., absent.

Judgment reversed.