PEOPLE *ex rel.* VITAN *v.* VITAN.

(*Court of General Sessions, New York County.* February, 1888.)

1. HUSBAND AND WIFE—ABANDONMENT.

Where a wife leaves her husband in another state, they being at that time residents of that state, and comes to and resides in New York county, and he afterwards comes and lives in another county in New York, he is not guilty of abandoning her in New York county by reason of his refusal, when calling upon her at her request in New York county, to live with or support her. Her offer to return to him should have been made at his residence.

2. CRIMINAL LAW—APPEAL—COURT OF SPECIAL SESSIONS.

Code Crim. Proc. N. Y. § 515, abolishes *certiorari* in criminal actions, and provides that "hereafter the only mode of reviewing a judgment or order in criminal action is by appeal." Laws N. Y. 1884, c. 372, provides that the only mode of reviewing a judgment or order in a criminal action or special proceeding of a criminal nature is by appeal. Code Crim. Proc. N. Y. § 749, provides that "a judgment upon conviction rendered by a court of special sessions may be reviewed by the

court of sessions of the county upon an appeal." Laws N. Y. 1882, c. 410, (consolidation act,) § 1456, provides that "any appeal from or amendment to an order of a police magistrate, convicting one as a disorderly person, shall be exclusively for the action of the court of special sessions." *Held*, that the court of general sessions of New York county has jurisdiction of an appeal from an order of the special sessions affirming a conviction by a police magistrate of one as a disorderly person.

Appeal from special sessions.

*William C. De Witt* and *Rufus O. Catlin*, for appellant.    *William A. Boyd*, Corp. Atty., for the commissioners, respondents.

SMYTH, R.   The defendant was arrested upon a warrant granted by one of the police justices of this city upon the complaint of the relator, Julie Vitan, in which she charged the defendant, her husband, with having abandoned her in the city of New York, without adequate support.   On being brought before the justice, an examination and inquiry into the facts and circumstances of the case was had before him; and upon the proofs taken the justice adjudged the defendant to be a disorderly person, and thereupon ordered the defendant to pay to the commissioners of charities and correction, weekly, the sum of five dollars for, and towards the support of, his family.   From this order the defendant appealed to the court of special sessions of the peace, which court thereupon proceeded to try the case, took the testimony of various witnesses produced before it, and made an order affirming the conviction of the defendant by the police justice, and required him to pay to the said commissioners of charities and correction the amount adjudged by the police justice to be paid by the defendant for the support of his family, and also requiring him to find surety for the performance by him of the order, and committing him until he should find such surety, or, in default thereof, ordered that he should be imprisoned for the term of six months at hard labor.   From the judgment and order of the special sessions, the defendant appealed to the court of general sessions of this county, a judge of which court allowed the appeal.

The first question presented for the determination of this court is as to whether an appeal lies to it from the court of special sessions, the respondent's counsel insisting that the court of special sessions alone has exclusive jurisdiction of such appeals, under the provisions contained in section 1456, c. 410, of the Laws of 1882, (New York city consolidation act.)   So much of that section as refers to the question presented by the respondent's counsel is as follows: "And that any appeal from or amendment to said order [of conviction of the person as a disorderly person] shall be exclusively for the action of the court of special sessions."   On the part of the defendant, it is insisted that the language of that section of the statute did not, prior to the amendment of section 749 of the Code of Criminal Procedure by chapter 372 of the Laws of 1884, preclude the supreme court from reviewing the decision of the court of special sessions on a common-law *certiorari*, and he refers to the cases of *People* v. *Commissioners*, 9 Hun, 212, and *People* v. *Sanders*, 3 Hun, 16, which sustain the position taken by him, as do also the later cases of *People* v. *Walsh*, 33 Hun, 345, 2 N. Y. Crim. R. 325; *People* v. *Carney*, 1 N. Y. Crim. R. 270, 29 Hun, 47.   Prior to the amendment of section 749 of the Code of Criminal Procedure by chapter 372 of the Laws of 1884 the Code contained no provision for an appeal in proceedings of this character; and prior to the passage of the consolidation act there was no method by which these proceedings could be reviewed except by *certiorari*.

By section 515 of the Code of Criminal Procedure before its amendment, writs of error and *certiorari* in criminal actions were abolished, and appeal substituted for such writs.   By chapter 372 of the Laws of 1884 this section of the Code was amended so as to abolish writs of error and *certiorari*, not only in criminal actions, but also in proceedings and special proceedings of

a criminal nature, and declaring that hereafter the only mode of reviewing a judgment or order in a criminal action, or special proceeding of a criminal nature, is by appeal; and it has been held, since the amendment of that section of the Code, that an appeal is now the proper and only method by which special proceedings of a criminal nature can be reviewed. *People* v. *Court of Sessions*, 45 Hun, 54. Prior to the passage of the consolidation act, it seems that the method of reviewing the conviction of a person as a "disorderly" person, in the city and county of New York, was by *certiorari*, and, since the passage of that act, the right to review the justice's judgment in such cases was by appeal to the special sessions of the county of New York, and the right of the supreme court by *certiorari* to review the proceedings of the court of special sessions. It is claimed by the counsel of the appellant that by the amendment of section 749 of the Code of Criminal Procedure the right of review, which the supreme court undoubtedly possessed, is conferred upon this court. Section 749 of the Code of Criminal Procedure, as it was originally adopted, applied only to an appeal from a judgment of conviction in a criminal action rendered by a court of special sessions, but, since the amendment of said section by chapter 372 of the Laws of 1884, it authorizes an appeal, not only from a judgment of conviction in a criminal action rendered by a court of special sessions, but also from a judgment of conviction by a police court, police magistrate, or justice of the peace, in proceedings or special proceedings of a criminal nature; and, as the case under consideration is a special proceeding of a criminal nature, I am of the opinion that the right of the appeal from the judgment of the court of special sessions rendered therein to this court is given, and that this court has the right to review the judgment of the special sessions in the proceeding. More especially does this appear to be so, as the right which a defendant has to review of the proceedings of the special sessions by the supreme court has been taken away by the abolition of the writ of *certiorari*.

Having arrived at the conclusions that this court has the right to entertain the appeal, and review the proceedings of the special sessions, an examination of the evidence becomes necessary for the purpose of determining whether the charge of abandonment has been sustained, and, if so, whether it took place in the city and county of New York. The parties, prior to their marriage, were residents of the city of Philadelphia, in which city they were married on September 20, 1878, and they continued to reside there for about five months after their marriage. The wife left her husband in that city, having, as she testified, "decided that she would live separated from the defendant for a while," and came to the city of New York to reside with her relatives. She resided here for a short time, and returned to Philadelphia, where she resided for a short time, and again returned to this city in 1881, and has since resided here. Since the separation of the parties in Philadelphia, they have never lived together; nor has the defendant contributed anything towards the support of his wife. The cause of the separation, according to the wife's testimony, was acts of cruelty perpetrated by her husband, his inability to support her, and her inability, by reason of sickness, to prosecute her business as a dress-maker. The alleged acts of cruelty are positively denied by the husband; and, if they were perpetrated, they appear to have been condoned by the wife. The defendant remained in the city of Philadelphia for a short time after the separation, and then resided in Greenpoint from the end of 1879 to 1881. From there he went to Europe on business, and on his return to this country resided, from March to July, 1882, in the city of New York, and from 1882 to the present time he has resided in Williamsburgh, Kings county, where he has ever since been employed in a factory at that place. In 1884, the defendant took his meals at a house in this city, but did not reside here. In that year he called upon his wife at her place of residence, in response to a letter from her inviting him to do so. A conversation occurred

between them in which the wife testifies: "I then asked him,—told him that we were both young, and there might be hope of us living happy together yet, and I asked him for support. I was very sick at the time. He said he would never live with me again, and I offered to go and live with him." The hus-- band denies that any such conversation took place. No other demand was made for support, or offer on the part of the wife to return to and live with her husband. · The evidence clearly shows that at this time, and down to the time the wife commenced these proceedings, in December, 1887, she had knowledge of the fact that her husband was a resident of Kings county, and that he was employed there. Upon this evidence, it is very clear, if there was any abandonment, it took place in the city of Philadelphia. The evidence does not establish abandonment of the wife in this city. At the time of the alleged offer by the wife to return to her husband, and the demand for sup- port, and refusal on his part to live with or support her, they were living separate and apart, and had been for years doing so. Indeed, the evidence establishes the fact that the wife, without legal cause, left her husband in the city of Philadelphia, with the determination to live separate from him, and that, although she knew him to be a resident of another county, she made no offer to return to and live with him at his place of residence. It was her duty, under the circumstances of this case, if she desired to compel her hus- band to support her, to go to his place of residence, and offer, at least, to re- sume the duties and responsibilities of a wife; and if he then refused to live with or support her she had a remedy. The defendant committed no offense within this county. He did not abandon his wife here. On the contrary, the wife voluntarily selected this city as her place of residence. Nor is this county bound to support her here. The right of the husband to select his own and his wife's residence is undoubted. *People* v. *Pettit*, 74 N. Y. 320. The magistrate who issued the warrant.for the arrest of the defendant did not acquire jurisdiction of either the person of the defendant, or of the subject- matter of this proceeding. The fact that the wife lived in this city on and prior to the time of the issuing of the warrant against the defendant, and his refusal to support her upon a demand made here, did not confer jurisdiction upon the magistrate. If it were otherwise, a wife, who had at some time been abandoned by her husband in another county or state, might, by taking up her residence in ·this· county, confer jurisdiction upon a justice here to punish him for that offense. No authority sustaining such a proposition can be found. *Bayne* v. *People*, 14 Hun, 181. See, also, sections 1453–1455 of · the New York consolidation act, (Laws 1882, c. 410.) A careful examination of the evidence leads me to the conclusion that the offense of abandonment was not committed in this city and county, and an examination of the statutes and authorities regulating and bearing upon·proceedings of the character of the one in question, convinces me that the magistrate before whom the pro- ceeding was instituted acquired no jurisdiction of either the person of the de- fendant, or of the subject-matter of the proceeding. The judgment of the special sessions must be reversed.