(Surrogate's Court, Cattaraugus County. September, 1896.)

1. EXECUTORS AND ADMINISTRATORS—FUNERAL EXPENSES.
    A burial casket, selected by an executrix, is chargeable against the estate of decedent, though decedent's husband approved the selection.
2. SAME—EVIDENCE—ADMISSIONS.
    Testimony that a married woman said "that she wanted him [her physician] well paid; she should see that he was well paid,"—in the absence of other evidence is sufficient to establish a claim against her separate estate for medical attendance.

Judicial settlement of the accounts of the executrix of the will of Anna E. Smith, deceased.

John J. Inman, for executrix.
W. G. Laidlaw, for creditors.
W. K. Harrison, in pro. per.

DAVIE, S. The decedent was a married woman, residing with her husband, Edwin Smith, at the time of her death. The executrix is a sister of decedent, and the residuary legatee under her will. The account filed shows the balance in the hands of the executrix of $3,189.32, out of which are to be paid the expenses of this accounting, two legacies, amounting to $225, and the debts hereinafter referred to. The remainder of the estate belongs to the executrix as such legatee.

The funeral expenses of decedent, to the amount of $125, have not been paid, and the single question relating thereto is whether the executrix must pay the same out of the funds of the estate, or whether the undertaker must look to the husband therefor. After the death of decedent the undertaker was called to her residence, and the executrix selected a casket from a book of designs, inquired the price, and ordered a polished box for the same. The husband was present, and approved of the selection. Nothing was said about who should pay the bill. Under the decisions it is apparent that this bill must be paid out of the funds of the estate. Reasonable and necessary expenses of interment, though, strictly speaking, not a debt of the decedent, are a charge against the estate. Patterson v. Patterson, 59 N. Y. 574; Laird v. Arnold, 25 Hun, 4; Id., 42 Hun, 136; McCue v. Garvey, 14 Hun, 562. Distribution of the estate cannot be ordered, nor the executrix discharged, until this charge upon the estate is satisfied.

Three other bills have been presented to the executrix, and disallowed by her. The executrix and each of the creditors have duly consented that these claims might be heard and determined by the surrogate on judicial settlement. Code Civ. Proc. § 1822. The first

of these claims is that of Dr. Williams, for services rendered by him for decedent during her last illness, and amounting, as is claimed, to the sum of $462. On the 14th day of September, 1894, the decedent received a fracture of one of her limbs. The doctor attended her and reduced the fracture, charging $50 therefor. She was also afflicted with a valvular trouble of the heart, which seems to have been aggravated by her injury, and became gradually worse to the time of her death, December 26th of the same year. The doctor testified, without objection, that he attended her from the time of her injury to the date of her death, making four visits each day. On his cross-examination he testifies as follows:

"I understood this case fully myself. Did not regard her heart trouble curable. I usually go, when I think I am needed in taking care of my patients, or when I am sent for. I was not sent for on every occasion that I visited deceased, but was very often. Often was sent for nights. The number of visits I make is regulated by the necessities of the case. Ordinarily, when I visit a patient every day, I consider them very sick. I cannot tell of any other patient whom I visited four times a day for so long a time. I went more than four times each day, but did not charge for any more than four. My usual price anywhere in the village is a dollar a visit."

The first question which arises with reference to this bill is whether the estate is liable at all or not. The primary liability for necessaries furnished the wife rests upon the husband. In the absence of an express agreement on the part of the wife to pay, the husband alone is liable. Byrnes v. Rayner, 84 Hun, 199, 32 N. Y. Supp. 542; Webber v. Spannhake, 2 Redf. Sur. 258; Potter v. Virgil, 67 Barb. 578; Arnold v. Allen, 9 Daly, 198. Such promise cannot be inferred from the fact that such services were rendered upon the request of the wife. In re Shipman's Estate, 22 Abb. N. C. 289, 5 N. Y. Supp. 559; Crane v. Baudouine, 55 N. Y. 256. But a married woman may render herself and her separate estate liable, even for necessaries, by an express agreement. Byrnes v. Rayner, supra; Ehrich v. Bucki, 7 Misc. Rep. 118, 27 N. Y. Supp. 247; Laws 1884, c. 381, par. 1, as amended by Laws 1892, c. 594. The only proof of an express agreement on the part of decedent to pay for these services comes from the wife of Dr. Williams. She testifies that she called upon decedent shortly after her injury, and that decedent then said to her that she had told the doctor that she would pay him well; that such conversation took place a few days after decedent was hurt. On her cross-examination this witness testified as follows:

"Q. Who first spoke of the matter of pay, you or Mrs. Smith? A. Mrs. Smith spoke of it herself during the conversation. Q. Give her language, if you can. A. She was telling what good care the doctor was taking of her, and she wanted him well paid. She should see that he was well paid. Q. That was all the conversation? A. She wanted him to come whenever he was sent for, for Mr. Smith might not come for him. She wanted good care, and wanted him to come whenever sent for, whether the nurse or Mr. Smith come, and she herself would see that he was well paid, and said she had told him so. Q. Say when she told him? A. When she first employed him, when she was first hurt; said she informed him she would pay him well."

It is very unsatisfactory to predicate a liability against an estate upon proof of a single admission of this character, but Mrs. Wil-

liams was evidently a fair and candid witness. Her evidence is uncontradicted, and proves the fact that such admission was made by the decedent. This admission cannot be ignored. It has some probative force in establishing a promise on her part to pay. The declaration of an intestate, binding him or impairing his estate, may be given in evidence against his personal representatives in all cases where they would have been competent against himself, if he had been living and a party to the action. Terwilliger v. Benefit Ass'n, 83 Hun, 320, 31 N. Y. Supp. 938; Hurlburt v. Hurlburt, 128 N. Y. 420, 28 N. E. 651; Steinhausen v. Accident Ass'n, 59 Hun, 336, 13 N. Y. Supp. 36.

Dr. Jackson testified that the services of Dr. Williams in reducing the fracture of decedent's limb was worth the amount charged. Aside from that, the evidence of the claimant in regard to the value of his services is entirely uncorroborated. Is his expression of opinion of the value of such services conclusive? He has charged $412 for attending deceased, four visits each day for 103 days, not missing a day or a visit, attending a patient afflicted with an incurable disease, giving but little medicine, calling two other doctors from Springville very often for counsel and advice. In view of all these facts, I am impressed with the belief that the charges are exorbitant, and ought not to be allowed in full. The courts have quite distinctly held that, where the value of services is involved, the testimony of expert witnesses is not controlling. Reves v. Hyde, 14 Daly, 431; Muller v. Ryan (City Ct. N. Y.) 2 N. Y. Supp. 736; Head v. Hargrave, 105 U. S. 45. From a careful consideration of all the facts and circumstances attending the rendition of these services, the nature of decedent's illness, and the manner in which the charge was made or formulated,—that is, the doctor residing very near her, and calling in to see her when he desired, then making a uniform or average charge of four visits a day at a dollar each,—I am of the opinion that the sum of $350 would be a very liberal allowance for his services, and that he ought not to be permitted to recover any larger sum from the estate.

The other two claims presented are those of Dr. Jackson for $235, and of Dr. Stanbro for $260. One item of Jackson's claim is for making an examination of the decedent for the purpose of preparing a certificate of her inability to attend the trial of an action as a witness, and for which a charge is made of $10. That charge is sufficiently established by the evidence. The balance of his claim, as well as that of Dr. Stanbro, is for medical attendance rendered by these physicians for decedent by way of counsel with the attending physician, Dr. Williams. These claimants each resided at the village of Springville, about 15 miles from decedent's residence. Jackson charges for 15 consultations, and Stanbro for 17 consultations, at $15 each. Stanbro also charges for an examination of the decedent for the purpose of making a certificate as above stated, $5.25. This latter item is apparently well established. No question arises, under the evidence, in regard to the express agreement on the part of the decedent to pay for these services, for Dr. Williams testifies that the decedent requested him to secure these physicians for the

purpose of consultation, and instructed him to tell them that she would pay them for their services; but the only question arises in relation to the reasonableness of their charges. Under the authorities above cited, we are not bound by their expression of opinion as to the value of such services. At the time of these various consultations, each of these doctors was in attendance upon an invalid sister of the decedent, residing with her. They made the same charges against this sister,—that is, $15 for each visit,—that they had made against the decedent. The suggestion already made regarding the decedent's condition and the character of her disease has an important bearing upon the question of the necessity of these repeated consultations and the value of the services rendered. I am satisfied, from all the evidence, that $10 a visit is all that should be allowed. This makes the claim of Dr. Stanbro $175.25, and that of Dr. Jackson $160; and to that extent their respective claims are allowed to be paid out of the funds remaining in the hands of the executrix.

Ordered accordingly.