THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* EMERY E. HARMER, Appellant.

(County Court, Onondaga County, January, 1912.)

Husband and wife — Rights, duties and liabilities of husband — Duty to support family — Abandonment and nonsupport — Disorderly persons.

Where defendant was arrested in one county upon a warrant issued by a local magistrate in another county on a charge of being a disorderly person within the meaning of section 899 (1) of the Criminal Code, the fact that the warrant was not indorsed as required by sections 156 and 157 of said Code until the day after the arrest is a mere irregularity and not jurisdictional.

Where, upon the trial of a charge of being a disorderly person within the meaning of section 899 (1) of the Criminal Code, it appears that defendant for over a year last past had only provided his wife with $18 for the support of herself and their three-year old daughter, although he was able to earn from $1.70 to $2 a day, he is properly convicted where the wife, who is absolutely without means and living with her parents, testifies that

she is willing to keep house except at defendant's mother's with whom she is not on speaking terms, and defendant, instead of asking his wife to come to a home he has provided, simply says " Go to my father's house."

In order to sustain a conviction in a proceeding for nonsupport under said section, it need not be shown that the family of defendant has actually become a burden on the public; if it appears that there is danger of becoming such the conviction ·is proper.

APPEAL from an order made on October 4, 1911, by Barton C. Meays, justice of the peace in and for the town of Van· Buren, Onondaga county, N. Y., in which it was held that the defendant is a disorderly person within the provisions of subdivision 1 of section 899 of the Code of Criminal Procedure, and which said order required the defendant to give the security provided for in section 901, which security was given by the defendant, and this appeal was thereafter taken.

Mosher, Wright & Bennett, for appellant.

Edward D. Chapman, assistant district attorney, for respondent.

· Ross, J.   It is claimed by the appellant that the justice of the peace did not have jurisdiction of the person of the defendant, for the reason that the defendant was arrested in Jefferson county, and at the time of the arrest the warrant was not indorsed by a local magistrate of that county, pursuant to the provisions of sections 156 and 157 of the Code of Criminal Procedure, the warrant not being indorsed until the day after the arrest.   The irregularity in the arrest was not jurisdictional.   People v. Ebespacher, 79 Hun, 410; People v. Cuatt, 70 Misc. Rep. 453; People v. Jeratino, 62 id. 587.

The principal claim of the appellant is that the people failed to make a case within the rules laid down in the case of People v. Pettit, 74 N. Y. 320, in that it is claimed that the defendant in this case offered to provide a home for his wife with his parents who reside in Jefferson county.   It

should be borne in mind that the record in this appeal, like ordinary appeals from a decision of a justice of the peace, is not complete. A justice is unable ordinarily to take all the evidence given and every presumption which can be reasonably entertained shall be indulged in to sustain the finding of the justice.

The defendant and his wife were married in April, 1907. The issue of such marriage is one child, a daughter three years old. The wife has no property or means of support and is living with her parents in the town of Van Buren. In the month of June after their marriage, the defendant and his wife went to live in the house of the defendant's parents in Jefferson county and there remained until September of the same year. The parents lived on a rented farm and the relations between the wife and her husband's parents were not harmonious — in fact the defendant's wife and her mother-in-law have not spoken to each other since May, 1910.

The defendant and his wife for a brief period of time kept house in Watertown; the defendant left and came to Syracuse. In 1910 the defendant was in Warner, in the town of Van Buren, and in the fall of that year he went to Pennsylvania where he remained until February, 1911, since which time he has worked at different places in the town of Van Buren and lived, at least for a few weeks, with his wife's parents, without paying anything for his own or his wife's or child's board. He did not communicate with his wife before he went to Pennsylvania of his intention in that respect, and his correspondence during his absence was very meager. The defendant, since June, 1910, down to the time of the trial, only provided his wife with about eighteen dollars for her support and that of his child, although he was able to earn from one dollar and seventy cents to two dollars a day.

The defendant's position is that he has offered to furnish his wife a place to live, but this offer seems to consist only of promises. The wife says she is now willing and always has been to keep house, except at his mother's. The defendant also says that he is willing and will furnish his wife a

house with his parents in Jefferson county. I will assume that his mother, who was sworn upon the trial, would have answered the question, which was objected to and excluded, to the effect that she is willing to allow her daughter-in-law to live with her. Without going into the question whether the actual furnishing of a home for his wife with his parents would discharge his marital duty which rests upon him to support his family, it is sufficient to say that it fails in this case for the simple reason that it is not true. He is not at his father's. He has not asked his wife and child to come to a home he has there provided for them, but says, " Go to my father's house " where, from previous experience between his wife and his mother, relations were unpleasant. Without a single preparation for housekeeping, without any assurance that he will provide food or raiment for his wife and family except his empty promises, without any evidence that he has arranged to work for or with his father, without even furnishing the necessary railroad fare to take his wife and child to his father's house, without any assurance that his father would permit him to remain there, he asks the court to say that he has in this manner discharged his duty as a husband and father. Judging what he will do in the future by what he has done in the past, this assurance would be very unreliable. While it is true that the husband has the right to select his own residence, it, however, must be a reasonable and actual selection. But in this case he has made no selection. A selection of a residence means a reasonable preparation, a possession, the presence of the husband; it means something more than to say " Go to Jefferson county and live."

The case of People v. Pettit, 74 N. Y. 320, is distinguishable. It is interesting to note in this case that it also arose in the town of Van Buren in 1873 and was an appeal from a judgment in favor of the people against the principal and sureties upon a bond which was given in a proceeding similar to this upon an order or judgment made in 1873 by the late DeWitt C. Greenfield, a justice of the peace. One of the questions litigated was whether there had been a breach of the condition " If for the space of one

year the wife shall not become a burden upon the public."
The defendant had a home with his parents who owned a
large farm near Cold Spring and a comfortable house, where
he lived, and to which place he asked his wife to come with
him and join him in his home, and even provided carriage
accommodations to take her there, and she declined solely
upon the ground that the defendant's father was intemperate.
See Appeal Book, Court of Appeal Cases 1878, vol. 17. The
Pettit case was one in which a farmer tendered to his wife
a home with his parents, his home, in a locality known and
near to his wife, and was the best home he could provide;
was suitable to his station and his business; while in this
case the defendant says " Go to my father's, that is the home
I provide for you," unaccompanied by any other condition
indicating that he in fact has provided such a home.

This proceeding was instituted under the provisions of
section 899 of the Code of Criminal Procedure, which reads
as follows: " The following are disorderly persons: persons
who actually abandon their wives and children, without ade-
quate support, or leave them in danger of becoming a burden
upon the public, or who neglect to provide for them accord-
ing to their means."

It appears from the language above quoted that it is not
necessary to sustain a conviction that the family of the de-
fendant has actually become a burden upon the public.   If
there is danger of their becoming such, a conviction is
proper.   The question presented in the Pettit case and also
in the case of Goetting v. Normoyle, 191 N. Y. 368, was
whether there had been a breach of the condition of a bond
given upon conviction of being a disorderly person; a bond
which provided, in substance, that the family of the defend-
ant should not become a burden upon the public, and which
bond has been held by the Court of Appeals to be one of
indemnity.   In other words, a conviction of being a dis-
orderly person may be based upon what is likely to occur,
while an action upon a bond given upon such conviction can
only be founded upon what has occurred.

Conviction affirmed.