LOTTIE LAZARCZYK, an Infant, by PAULINE SZOBLAK, Her Guardian ad Litem, Plaintiff, *v.* STANISLAW LAZARCZYK, Defendant.

Supreme Court, Oneida County, December, 1923.

**Husband and wife — when motion to confirm report of referee recommending annulment of marriage will be denied as matter of discretion — Domestic Relations Law, § 7(1), applied.**

Where the report of the referee recommends the annulment of a marriage on the ground that at the time it was contracted the plaintiff was under eighteen years of age, that the parties had not cohabited since plaintiff arrived at that age, but the record discloses no facts that would lead to the conclusion that the parties could not live as husband and wife if each would recognize their parental duty to properly care for and maintain their child, who is less than a year old, a motion to confirm the report of the referee will be denied as matter of discretion under section 7(1) of the Domestic Relations Law, as amended in 1922.

MOTION to confirm referee's report in an action for annulment of marriage.

*Dan T. Burke,* for plaintiff.

*James & Leo Coupe,* for defendant.

MARTIN, LOUIS M., J.   This application is made to confirm a report of the referee granting an annulment of the marriage of the parties, on the ground that plaintiff was under the age of eighteen years at the time the same was contracted, and that no cohabitation of the parties had taken place since the plaintiff arrived at said age.   There is one child of the union, less than one year old, now in the custody of the plaintiff.

Prior to September 1, 1922, the court had no discretion in matters of this character, and on proof of age, and no cohabitation after the eighteenth year, annulment followed.   The result was, that Special Terms and official referees were burdened with a large number of this class of cases.   It was practically putting the official approval of the court on trial marriage.   Young people of immature age had no restraint; they would contract a marriage and if not suited with the result, would, after a time, apply to the court and

obtain an annulment on statutory grounds. This resulted in lowering the standard of the marriage contract, made it a farce, and was in direct conflict with the teachings of the church to which many participants belonged; a condition in society that courts would not tolerate if they had the power to prevent.

The view of the court on this subject is very pertinently expressed by Edgcomb, J., in the recent case of *Wendt* v. *Wendt,* 121 Misc. Rep. 791, in the following language: " Marriage contracts, the most solemn agreements which can be made between a man and a woman, are not to be lightly set aside. Each party promises to take the other for better or worse."

To remedy this growing evil, the law was amended in 1922, to take effect September first of said year, and subdivision 1 of section 7 of the Domestic Relations Law was modified by the following: " Nonage shall not of itself constitute an absolute right to the annulment of such marriage, but such annulment shall be in the discretion of the court which shall take into consideration all the facts and circumstances surrounding such marriage."

This amendment has received judicial interpretation in *Todara* v. *Todara,* 200 N. Y. Supp. 567, in the following language: " It is obviously the intention of the legislature to abolish the license afforded by the prior state of the law to permit persons under 18 years of age to make trial marriages which they could repudiate without penalty. It recognizes that a marriage may be validly contracted by a person under that age that public policy dictates should not be annulled at the mere desire of the parties."

There is no evidence in the case at bar that would warrant an annulment for cruel or inhuman treatment, neither is there fraud, duress, or lack of appreciation of the marriage contract shown. While the original marriage contract was entered into under peculiar circumstances, the fact remains that after those young people returned home, they obtained the consent of the parents on both sides, and were remarried by the pastor of the Catholic church, to which they both belonged, in the presence of the mother of plaintiff, and also the mother of defendant. The unfortunate disagreements are not serious, but are the direct results of two young people entering into a solemn contract, the continuing of which is not surrounded by that romance which they had anticipated. Neither party was properly fitted by training to enter upon the marriage relation, and assume the burden of married life; but having assumed it, they must abide by the result. Courts should in the future, and no doubt will, exercise extreme care in these cases, and unless sufficient facts and circumstances surrounding the marriage are shown to justify a finding of annulment, outside of mere non-

age, will refuse a decree. It may be well to suggest in regard to the practice under this amendment, that complaints in the future should not only allege nonage, and noncohabitation after eighteen years, but, under the general rules of the Civil Practice Act, should allege other and further facts surrounding the marriage, and the married life, so that a case may be so fully developed that it will give the court an opportunity to exercise that discretion evidently intended by the legislature.

No facts are disclosed in the record in this case that would lead to a conclusion that these parties could not live together as husband and wife, if each realize the duty and responsibility that rest upon them as parents, to properly care for and maintain the child that is the result of their union. A case out of the ordinary must be presented before the court will deprive a child of the care of the mother and support of the father, particularly during its infant years.

The motion to confirm the report of the referee is, therefore, denied, and an order may be prepared accordingly.

Ordered accordingly.