LOTTIE LAZARCZYK, an Infant, by PAULINE SZABLAK, Guardian ad Litem, Plaintiff, *v.* STANISLAW LAZARCZYK, Defendant.

Supreme Court, Oneida County, February, 1924.

**Husband and wife — annulment of marriage — allegation that wife was under age of legal consent — failure of wife to consider overtures looking to a resumption of relations with husband — when complaint in second action for same relief will be dismissed.**

Unbeknown to their parents the plaintiff and defendant ran away and were married by a justice of the peace. She was sixteen years of age and the defendant was three years her senior. When they returned home a few days later plaintiff on the advice of her mother had a priest perform another ceremony according to the rites of the Catholic church. Before that ceremony plaintiff went to confession and received holy communion. They lived together several months but, owing largely to the influence of their parents, misunderstandings and petulant altercations arose and a separation followed. A few months later they were again living together but just before the birth of her baby plaintiff went to her parents, since which time she and her husband have lived separate and apart. On the refusal of the court to confirm the report of the referee in an action brought to have the marriage declared void because plaintiff was under the age of legal consent at the time, she was allowed to bring the present action for the same relief upon the assurance that she had additional evidence not given on the trial of the prior action. On the trial of the present action the plaintiff refused to consider any overtures looking to a resumption of family relations with her husband, for which stand, the court believed, plaintiff's father was responsible. *Held*, that the complaint will be dismissed.

ACTION to annul a marriage.

*Dan T. Burke*, for plaintiff.

*Leo Coupe*, for defendant.

EDGCOMB, J. This is another one of those actions, which have become altogether too frequent of late, to have a marriage declared void because the plaintiff was under the age of legal consent when the ceremony was performed. This is the second trial of the case. Mr. Justice Louis M. Martin refused to confirm the report of the referee in favor of the plaintiff on the first trial, but allowed her to bring another action for the same relief, upon the assurance that she had additional evidence not given on the first trial.

The evidence reveals the tragic end which inevitably follows clandestine marriages of mere children. Unbeknown to their parents the parties ran away, and were married by a justice of the peace in the city of Oneida. Plaintiff was sixteen years of age; defendant was three years years her senior. A few days later they returned to Utica. The mothers of the respective parties urged that they be remarried by a Catholic priest in order to comply with the requirements of the church to which they belonged. Both

mothers were present at that ceremony. A wedding breakfast followed, which plaintiff's father as well as her mother attended. The young couple lived together for several months, but, owing largely to the interference of their parents, misunderstandings and petulant altercations arose, and a separation followed. A few months later oil was poured on the troubled waters, and they were back living together but only for a few months. Plaintiff was pregnant, and just before her baby was born she went to her parents, since which time the parties have lived separate and apart. The child is now living with the mother.

Upon the present trial the plaintiff urged as an additional ground for annulment that her consent was obtained by fraud and duress. It is not necessary to discuss that phase of the case. Suffice it to say that in my opinion there was no fraud or duress exercised by the defendant to induce the plaintiff to consent to this marriage. She willingly and voluntarily gave her assent to both ceremonies. Therefore, if plaintiff can recover it must be upon the ground that she was under the age of legal consent, the only ground urged on the previous trial.

This decision might very well rest upon the able, sensible and convincing opinion of my associate, Mr. Justice Martin, on the previous trial. *Lazarczyk* v. *Lazarczyk*, 121 Misc. Rep. 723. With that opinion I am in most hearty accord. I gladly follow it here, even with the additional evidence not given on the previous trial.

Under the amendment of 1922 * an annulment does not follow as a matter of course upon proof that the plaintiff was under eighteen years of age. The statute now provides that the " annulment shall be in the discretion of the court which shall take into consideration all the facts and circumstances surrounding such marriage."

This amendment was passed, as was so clearly pointed out by Judge Martin in the *Lazarczyk Case, supra,* and by Judge Tierney in *Todara* v. *Todara,* 120 Misc. Rep. 807, to put an end to the privilege which had for years been accorded young people of consumating a trial marriage, and then repudiating their act without penalty, if perchance the experiment did not suit their passing whim or fancy. The mere desire of the party is no longer controlling.

Judge Martin says (p. 724): " Courts should in the future, and no doubt will, exercise extreme care in these cases, and unless sufficient facts and circumstances surrounding the marriage are shown to justify a finding of annulment, outside of mere non age, will refuse a decree."

Public policy demands that the court should refuse to put its

---

* Dom. Rel. Law, § 7, subd. 1, as amd. by Laws of 1922, chap. 313.

stamp of approval on trial marriages. The marriage contract is looked upon by the law as the most sacred one which can be made. It should be kept inviolate. Without marriage, and without the sancity of the contract there can be no ideal family or family life. The home and the family are the very basis upon which our civilization rests. When children are brought into the world, they should not be suddenly bereft of one parent because of the changing fancy or some whim or desire of the other. No community can long endure where family ties are forgotten and where marriages can be dissolved for the asking, and where free love runs rampant. There are thousands of tragedies existing to-day because the husband and wife have been illy mated, and have discovered that fact when it was too late. But it has never been the policy of our law to give relief to those people, unless one or the other has violated his or her marriage vow, or unless one has abandoned the other or treated the other in such a manner as to render it unsafe for that one to live longer with the wrongdoer. It is better that a few be made to suffer and to lie in the bed which they voluntarily made, than to break down the walls which the church and civilization has built up about the marriage contract.

No hard and fast rule has been laid down by which it can be determined just when the discretion of the court should be exercised in favor of an annulment and when it should not. The result must be governed by the facts surrounding each case. The legislature has seen fit to provide that under certain circumstances a husband and wife can legally live separate and apart. Our statutes provide not only for a divorce, but for a separation from bed and board. It might well be said that in an action brought by one under the age of legal consent to have a marriage declared a nullity, evidence which would satisfy the court that there was a just ground for a divorce or separation would warrant the court in exercising its discretion and annuling the marriage. I do not mean to say that such discretion should only be exercised in case the defendant were found guilty of adultery, or of cruel and inhuman treatment, abandonment or failure on the part of the husband to provide for the wife. Other situations might arise which would warrant the abrogation of a marriage.

There is no evidence or suggestion here that the defendant has committed adultery. He sometimes drank to excess. In this he was encouraged by plaintiff's father. On several occasions he struck the plaintiff, and treated her in a manner unbecoming a gentleman or a husband. Many times there was friction and misunderstanding between the two. That is not to be wondered at, considering their age, environment and want of training. But

I do not think that plaintiff's conduct could properly be denominated as cruel and inhuman within the meaning of that expression as used in that part of the Civil Practice Act relating to separation actions. As was said in *Wendt* v. *Wendt*, 121 Misc. Rep. 791, 792: " Misunderstandings, bickerings and quarrels between a married couple are not a sufficient ground to justify a court in granting a decree of separation. Neither does a single act of physical violence which does not render it unsafe for the parties to cohabit together, or which does not raise a reasonable apprehension of further violence, with danger to life, limb or health, constitute grounds for a separation."

The acts of physical violence testified to by the plaintiff occurred before or about the time of their first separation. When they patched up their differences, and went back to living together the second time the plaintiff forgave the defendant for what had occurred in the past, and such acts could not be made the basis of a subsequent action for separation from bed and board. *Wendt* v. *Wendt, supra.*

We must, therefore, scrutinize the evidence for some other reason why the court should exercise its discretion in plaintiff's favor, if that is to be done. After a most careful search I fail to find any such reason. In fact, it seems to me that a decree of annulment under the facts and circumstances here disclosed would establish a most dangerous precedent.

Although the plaintiff was but sixteen years old, she knew what she was doing, and was perfectly willing to marry the defendant. The first ceremony was not the result of a sudden impulse. It was not performed for several days after plaintiff promised to marry the defendant. Not being content with the solemnity of the ceremony as performed by the justice of the peace, plaintiff, on the advice of her mother, had the priest perform another ceremony according to the rites of the Catholic church. Before that ceremony she went to confession, and received holy communion. Under such devout and sober surroundings she ought to have appreciated the grave nature and solemnity of the contract which she then made before the priest and Almighty God, and ought to have realized that when she declared that she had the uncompelled purpose and decisive mind to take the defendant for her lawful husband, and had not plighted her troth of matrimony to another, and when she promised that she would not forsake the defendant until death parted the two, such promise was one to be kept and not broken. To now permit the plaintiff to violate that solemn agreement, made under such circumstances, without just cause or provocation, except that she was immature at the time

it was made, and is now tired of the defendant, and cannot fit herself into his life, would, it seems to me, be an unjustifiable act on the part of the court, and unfair to both plaintiff and the defendant, to say nothing of their child. It would be notice to all young people under age of legal consent that, if they desired to get married, they could do so with impunity, and if they tired of their mate they could be freed and given a chance to marry again for the mere asking.

It is a matter of grave concern to those who have given the matter any consideration that marriages by girls of tender age are a common occurrence among a certain class of foreigners, who now constitute a large portion of the inhabitants of many of our cities. These girls and their parents should be made to understand that the marriage contract is one which will be enforced, and when once consummated will not be easily set aside, and that if a young girl wants to take a chance of marrying under age she cannot hope to get redress in our courts and be relieved of her solemn binding agreement except for the very best of reasons.

Much of this trouble growing out of youthful as well as hasty marriages could, in my opinion, be obviated if the legislature would pass a law which would better regulate the ceremony. People come to the courts to get out of trouble. They should be made to take more care not to get into trouble.

Not only from the standpoint of public policy but for the sake of the child of these two people should this decree be denied. There is no reason why these parties cannot live together in as much peace and harmony as they could live with any one. During the trial I attempted to bring about a reconciliation. I was assisted by the priest. Our efforts, however, were unavailing. The defendant expressed a willingness, in which I believe he was sincere, to support his wife and baby, and to take a pledge of total abstinence to the priest and to the court. The plaintiff refused to consider any overtures looking to a resumption of her family relations with her husband. I believe that her father was largely responsible for her stand. I am convinced that, if their parents will keep away, these young people can live happily together. For the sake of their child they should try to do so.

Inasmuch as I have dismissed the complaint I have no authority to make an order compelling defendant to support his child. That duty, however, rests upon him, and I have no reason to suspect that he will fail so to do.

Complaint dismissed, without costs. Findings, if not agreed upon, may be settled before me on two days' notice.

Judgment accordingly.