In the Matter of the Estate of CELIA SIDMAN, Deceased.

Surrogate's Court, Kings County, December 14, 1934.

*I. Gainsburg*, for Abraham Sidman.

*Delatour, Kennedy & Miller*, for Manie Sidman.

*Murray M. Halwer*, for Joseph Sidman and another.

*Stephen E. Ryan*, special guardian for Jerome Sidman.

WINGATE, S. It is an unfortunate fact that many of the most acrimonious controversies presented to the courts for adjudication involve members of a family and concern themselves with their efforts to obtain by almost any means or expedient, the material possessions of one whose hold thereon has become relaxed in death. In their endeavor to secure to the greatest possible extent every unearned dollar which has fallen from the dead hand, it too often happens that every tie of blood and affection is severed, and avarice and greed become the sole activating forces.

A striking demonstration of this condition at its worst is unfolded in the absurdly prolix record in the present proceeding under

section 145-a of the Surrogate's Court Act for the determination of the validity of an attempted election by a surviving husband. The evidence adduced consists almost wholly of an undigested mass of irrelevancies and immaterialities, each member of the family apparently vieing with each of the others in the depth of irrelevant muck through which he was willing to wade in his effort to attain the desired goal. Son is ranged against father and sister against brother; adultery, conspiracy and even murder being charged or intimated in an atrocious competition of calumny.

One, and only one, material fact is patent from the exaggerated, conflicting and obviously at least partially perjured testimony of the antagonists, namely, that the surviving husband left the decedent in the family home in the Bronx in November, 1929, and established a separate residence at Sea Gate. Not a scintilla of evidence was adduced that this departure was by her consent or procurement. She later took up her residence at Brighton Beach at a point only a short distance from his new abode, but he never rejoined her. Under such circumstances, it is patent that he brought himself within the terminology of subdivision 4 of section 18 of the Decedent Estate Law, as having abandoned the testatrix, making wholly immaterial the earnestly controverted question of whether or not he also failed to provide for her. A double duty rested upon him in the performance of his marital obligations, and it having been shown that he failed in one, the question of whether or not he also failed in the second became wholly immaterial. (*Matter of Sitkin,* 151 Misc. 448, 457; *Matter of Schriffrin,* 152 id. 33.) The enactment presently under consideration, like section 133 of the Decedent Estate Law, considered in the last cited case, contains a double disqualification by providing that " no husband * * * shall have the right of such election," " who has neglected or refused to provide for his wife, *or* has abandoned her." The " or " is not italicized, but the punctuation renders the legislative intent incapable of misunderstanding even in the absence of the appended explanatory note of the Commission, which is of itself conclusive of the question. (*Matter of Curley,* 151 Misc. 664, 668; *Matter of Quenzer,* 152 id. 796, 798; *Matter of Burstein,* 153 id. 515.)

The primary invalidating fact having been demonstrated, the sole remaining material consideration was whether any alteration in the relations of the parties occurred prior to the death of the wife.

The testimony demonstrated that on September 13, 1933, the decedent was taken from the hospital where she was then staying, and conveyed first to the home of her son Irving and then to the residence of her husband at Sea Gate. That she was wholly rational at the time and fully understood what she was doing, was amply

demonstrated by the wholly disinterested testimony of the hospital physician, as was the fact that she was somewhat improved in physical condition on the day of her departure.

The sole remaining question of importance, therefore, was whether she was virtually kidnapped by her husband, as was intimated by his opponents, with the further suggestion that his purpose was to take her to a place where her life would be shortened, or whether she went with him of her own free will and accord, and that thereby a reconciliation was effected, which was the position supported by the respondent's witnesses.

At this stage of the trial the court had substantially concluded that the fabrications and falsifications of the opposing witnesses had made impossible a determination of this issue, and that the irreconcilable narrations of both sides must be wholly disregarded on the principle "*falsus in uno, falsus in omnibus*" (*Matter of Davis*, 142 Misc. 681, 686), with the result that the attempted elector had failed to sustain the burden resting upon him of demonstrating his status as one entitled to exercise this newly-created right. (*Matter of Sitkin*, 151 Misc. 448, 456.) Then the single wholly credible witness at the trial (excepting the physician), in the person of Celia Sidman, took the stand. Her testimony came as a refreshing breeze into the fetid and supercharged atmosphere of the courtroom. She was a daughter-in-law of the deceased and was obviously wholly untouched by the contamination of rancor and avarice which so clearly infected the other witnesses. In simple, straightforward language she told of her observations respecting the actions of the decedent and her husband after their reunion. Exaggeration and bias were obviously wholly absent from her narration and her testimony was not only inherently credible but withstood every attack of cross-examination. As thus demonstrated the court is fully satisfied that a complete reconciliation between husband and wife was consummated, that the latter voluntarily took up her residence with him, and that her acts effected a full condonation of his past misconduct (*Doty* v. *Rensselaer County Mutual Fire Ins. Co.*, 194 App. Div. 841, 843, 844), with the result that they were completely obliterated so far as the present proceeding is concerned. (*Lazarczyk* v. *Lazarczyk*, 122 Misc. 536, 539; *Ryan* v. *Ryan*, 132 id. 339, 342.)

It follows that it must be determined that the surviving husband in the case at bar was entitled to elect to take his intestate share of the estate pursuant to the provisions of section 18 of the Decedent Estate Law. All costs of this proceeding will be personally assessed against the petitioning son.

Enter decree on notice accordingly.