In the Matter of the Probate of the Will of THERESA LEVINE, Deceased.

Surrogate's Court, New York County, November 26, 1948.

*Samuel W. Cracowaner* and *Gerald Paradise* for Isabel Cracowaner, as executrix of Theresa Levine, deceased, proponent.

*Maxwell M. Wallach,* contestant in person.

DELEHANTY, S. After the death of deceased letters of administration on her estate were issued to her surviving spouse. Thereafter a paper was propounded as deceased's will. The letters to the spouse were thereupon suspended. The surviving spouse filed objections to the probate of the propounded paper. The present motion seeks to strike out his objections.

The moving parties assert that a valid antenuptial agreement entered into between deceased and objectant deprives him of any interest in deceased's estate and now operates to deny him the status of objectant to the probate of deceased's will. In addition, the moving parties rely upon a judgment of separation obtained against objectant in a matrimonial action in this State. It is asserted by the moving parties that in that action there was a finding that objectant had abandoned deceased. Hence, it is argued that under subdivision (c) of section 87 of the Decedent Estate Law objectant has no status to contest deceased's will since he is not a distributee.

Respondent's assertions in respect of the antenuptial agreement are not clear since his answering affidavit indulges mainly in arguments and conclusions. He must clarify his factual contentions in respect of it within the period allowed hereafter. If any factual basis is alleged for attack on the antenuptial agreement, a hearing of that separate issue will first be directed. In respect of the judgment of separation he asserts that he is free to challenge the judgment and (somewhat obliquely) that in any case he and deceased had become reconciled before her death and that the judgment no longer operates as a bar to an intestate interest on his part in the estate. Without in any wise indicating any view as to whether a properly pleaded attack on the antenuptial agreement could succeed, the court turns to the question whether the alleged reconciliation with deceased has any effect on the separation decree and on the finding of abandonment made therein. Reference must be made both to the statute of distributions and to the case law dealing with separation actions in the solution of this question.

Section 87 of the Decedent Estate Law as it was revised in 1929 (L. 1929, ch. 229) did not bar from a share in intestacy a spouse who had been guilty of abandonment. Subdivision 4 of

section 18 of the Decedent Estate Law had made such abandonment a basis for denying a right to elect against a will. The disparity between the two sections of Decedent Estate Law was pointed out in 1933 in *Matter of Knuppel* (151 Misc. 773). Thereafter, by chapter 216 of the Laws of 1934, the present subdivision (c) of section 87 of the Decedent Estate Law was enacted in language which clearly indicates that the Legislature intended to make the same factual conditions in respect of abandonment applicable both to a right as distributee and a right of election against a will. The text of subdivision 4 of section 18 of the Decedent Estate Law is plainly the model upon which the text of subdivision (c) of section 87 of that law was drawn.

The reports of the Commission to Investigate Defects in the Law of Estates furnish a guide to the meaning of the text which, as just stated, is substantially identical in the two provisions of Decedent Estate Law. When the commission dealt with the text of section 18 in 1929 (Combined Reports of the Decedent Estate Commission, p. 32) it said: '' Such an abandonment * * * is intended, as our courts uphold, as sufficient to sustain a judgment of separation under section 1161 of the Civil Practice Act.'' Prior to the enactments of 1929 the Court of Appeals had said in *Mirizio* v. *Mirizio* (248 N. Y. 175, 179–180): '' Not every separation is an abandonment beyond annulment or recall. One must look to all the circumstances * * * We have refused to compress within a formula the extenuating possibilities of behavior in all its myriad diversities * * * . Separation to be abandonment must be obstinate and hardened ''. The same court had said still earlier in *Bohmert* v. *Bohmert* (241 N. Y. 446, 452) that a separation wholly unjustified in its inception would not constitute abandonment if the deserting spouse repented and made timely and bona fide offers to return. (See, also, *Silberstein* v. *Silberstein*, 218 N. Y. 525.) Other cases hold that a separation which ends in reconciliation and a resumption of cohabitation does not constitute such an abandonment as warrants a judgment of separation (*Matter of Sidman*, 153 Misc. 735; *Matter of Chandler*, 175 Misc. 1029, 1031; see, also, *Lazarczyk* v. *Lazarczyk*, 122 Misc. 536, 539; *Ryan* v. *Ryan*, 132 Misc. 339, 342). The cases speak of such a return and such a resumption of marital relations as constituting obliteration of the abandonment or condonation of it — without discrimination between these ideas. Condonation is ordinarily described as conditional (27 C. J. S., Divorce, § 59) and as leaving the cause of action merely in

suspense. A complete reconciliation on the other hand has the effect of wiping out the offense of desertion or abandonment and of destroying the original cause of action (*LaFlamme* v. *LaFlamme*, 210 Mass. 156; 34 Harv. L. Rev. 435; 12 Col. L. Rev. 79). It follows from these principles that, except for the existence of the judgment, the plea of reconciliation and resumption of marital relations would be sufficient to compel a hearing on that branch of the motion which charges abandonment of deceased by objectant. Hence, the effect to be given to the judgment is decisive on this motion.

The history of the matrimonial action between the parties is this: Objectant sued deceased for a separation and she counterclaimed for one. Objectant discontinued his action. The counterclaim was pressed and resulted in a judgment of separation in favor of deceased on the grounds, among others, of abandonment and failure to support. The findings of fact in respect of the abandonment are that on September 4, 1945, objectant locked deceased out of their apartment and for six consecutive weeks refused to permit her to enter it; that at the end of this period he vacated the apartment and permitted the wife to return to it only after she had obtained police assistance; that when she came back with police aid objectant left the apartment and abandoned deceased; that thereafter objectant came back by leave of deceased and resumed a common household but thereafter further trouble ensued and objectant again left deceased and their common home for one day; that he returned the same day and the couple occupied a common home for about a month and a half; that at the end of that period objectant left the home and up to the date of the judgment, September 23, 1947, failed to return. On these findings it was adjudged that deceased was abandoned by her husband. The judgment is still of record.

Respondent undertakes to challenge here the action of the Supreme Court on grounds based on supposed departures from the terms of the statutes regulating matrimonial actions. All of that argument is without basis and the court proceeds to the question whether facts occurring *after the judgment had been rendered* can in any circumstances permit a spouse to claim an intestate share despite a conclusive finding of abandonment in such a judgment. What is involved is the question whether a full and complete reconciliation and a resumption of cohabitation operates to deprive of effect the provisions of subdivision (c) of section 87 of the Decedent Estate Law when the abandon-

ment claimed under that subdivision is based exclusively on a finding made in an action for separation which preceded such reconciliation.

The terms of the judgment should be noticed. It adjudges that the deceased " be and she hereby is, separated from the plaintiff, * * * from bed and board forever, upon the ground of plaintiff's abandonment of the defendant, and his cruel and inhuman treatment of the defendant, and his failure to provide for and support her." The judgment contains no provision for deceased's support. The recitals in the decretal provision add nothing to its effect. Its tenor is that for the future *and forever* deceased was separated from her husband. Under the statute (Civ. Prac. Act, § 1165) a judgment such as was entered here may be revoked, though purportedly the separation is forever. An application for revocation must be " accompanied with satisfactory evidence of * * * reconciliation ". Until so revoked the judgment of separation, *as such,* remains in operation. So long as it so remains in effect neither spouse may maintain an action for separation against the other (*Schirmer* v. *Schirmer,* 260 App. Div. 1057; *Quirk* v. *Quirk,* 175 Misc. 703). But the judgment does not dissolve the marriage tie. It effectuates in respect of the marriage contract " a modification of the marriage relations, duties and obligations * * * ." In the action resulting in the judgment " The court is virtually asked to change and readjust these relations and to prescribe such new duties and obligations to be observed by the litigants as justice may require. Such a decree, when made, is the charter that, during the separation, must regulate the obligations and duties of the parties." (*People ex rel. Comrs. of Public Charities & Correction* v. *Cullen,* 153 N. Y. 629, 637; *People* v. *Jansen,* 264 N. Y. 364, 366.) Not only is it settled law that the parties may effect a reconciliation as well after as before judgment but the statute just quoted makes it clear that such reconciliations are contemplated. Obviously it is in the public interest that a reconciliation occur and that the family unit be re-established.

While a decree of separation permits spouses to live separate and apart from each other the decree does not bar resumption of marital relations even though it still governs their obligations if after a temporary reconciliation they part again. The effect of such reconciliations and such resumptions of life in a common home is substantial even though the decree remains effective as a regulation of marital duties. In *Schatzberg* v. *Schatzberg* (229 App. Div. 214, 216) a unanimous Appellate

Division held that such a judgment might be enforced in respect of an award of alimony where the parties after a reconciliation had separated; but the court also said that the period of resumption of family relations and the quantum of family support furnished by the husband during the period of such resumption of relations might constitute proper basis for refusing enforcement of the money provisions of the decree during the period of reconciliation. Other cases in the Supreme Court have treated the period of reconciliation and of family maintenance as a payment of the installments provided for in the decree (*Bailey* v. *Bailey,* 119 Misc. 433; *Washburn* v. *Washburn,* 137 Misc. 658).

A case which makes clear the distinction drawn between the money or financial aspects and the marital or family aspects involved in separations is *Blumenthal* v. *Blumenthal* (194 Misc. 322). The facts in that case were that a money judgment had been entered on a separation *agreement* entered into between the spouses. There was no matrimonial action. The husband sued the wife asking for rescission of the separation agreement and for restraint of the wife from asserting any claims for money under it or under a judgment entered in pursuance of it. The question presented was whether or not the wife's motions to dismiss the respective causes of action should be granted. In respect of two of the causes of action the motion was granted for reasons not relevant here. In respect of the other causes of action the motion was denied. The opinion of SHIENTAG, J., points out that the provisions of section 1165 of the Civil Practice Act operate only in respect of a judgment in a matrimonial action and holds that in respect of a money obligation of a spouse a reconciliation adequately established and including an agreement to cancel a separation agreement would operate to prevent further enforcement of the agreement and further enforcement of any obligations under a judgment entered on the agreement. The court said (p. 324): "Assuming that the reconciliation by *itself,* though sufficient to annul plaintiff's liability for unpaid amounts previously due under the separation agreement, did not have the effect of also rescinding the judgment for such unpaid amounts theretofore entered, an *express agreement* of the parties, entered into as part of the marital reconciliation, that the judgment was to be null and void and included within the scope of the rescission, is entitled to be given full force and effect." (Emphasis in original.) The reference to section 1165 of the Civil Practice Act seems to indicate that the need for appeal to the court

itself is limited to the *marital* duties and obligations regulated by a judgment in an action for a separation.

Since parties separated by a judgment in a marital action may validly effect a reconciliation and may as part of the terms of such reconciliation make valid agreements in respect of the money obligations of the defendant spouse under the judgment, it must be held that this court may not say as matter of law that the mere existence of an unmodified judgment of separation based on a finding of abandonment in a past period constitutes *conclusive* proof of abandonment within the meaning of section 87 of the Decedent Estate Law. Neither does such a judgment constitute such conclusive proof of failure to provide within the meaning of the same section. The judgment, however, makes a prima facie case of such abandonment and of such failure to provide and the spouse has the burden of showing facts which negate the continuance of the bar to his rights as a distributee established prima facie by the judgment.

The discussion in which the court has indulged is intended to make clear that the court may not dispose of the matter on affidavits but (after the position of the spouse is clarified in respect of the antenuptial agreement) should hold a preliminary hearing at which the parties may submit formal proof (*Matter of Cook*, 244 N. Y. 63, 72; *Matter of Dicks*, 267 App. Div. 117). In so ruling the court is adopting the course taken by Surrogate McGarey in *Matter of Erzinger* (183 Misc. 806). The case last cited involved the same question as that now before the court. There the Surrogate refused to determine the matter summarily.

On or before December 4, 1948, the spouse may file an amending affidavit wherein he may particularize his factual grounds for attack upon the antenuptial agreement. If such amending affidavit raises any issue of fact in respect of the agreement and the legal effect thereof at the date of deceased's death a hearing in respect of such issue or issues will be had on December 10, 1948, at 2:00 o'clock p.m. If the amended answering affidavit fails to raise any issue in respect of the antenuptial agreement the motion to dismiss the objections will be granted on the basis of such agreement. If a hearing proceeds and it is held that the agreement is not adequate basis for dismissal of the objections a further hearing on the questions raised respecting the separation decree will be held.

Proceed accordingly.