## Cox *v.* Cox.

*(Supreme Court, General Term, Fourth Department. May 10, 1889.)*

1. DIVORCE—CRUELTY—CONDONATION.
    Code Civil Proc. N. Y. § 1758, relating to divorce on the ground of adultery, provides that "voluntary cohabitation of the parties with knowledge of the fact" will condone the offense. Section 1762, naming cruelty as a ground of divorce, is silent as to voluntary cohabitation working condonation. *Held*, that sexual intercourse between the parties is not a condonation of antecedent acts of cruelty.

2. SAME—EVIDENCE.

    Sexual intercourse had after the acts of cruelty relied on is evidence of condonation, but is not conclusive.

    Appeal from special term, Tompkins county.

    Action by Clara B. Cox against William T. Cox, for a divorce. The referee, as conclusions of law, found (1) "that the plaintiff is entitled to a judgment or decree of separation from bed and board from the defendant; (2) that the defendant pay to the plaintiff the sum of fifty dollars quarter-yearly from and after the 1st day of January, 1888, or two hundred dollars per annum in all, for and during the life of the plaintiff, for her support and maintenance." The parties were intermarried on the 29th day of November, 1882, at the town of Lansing, county of Tompkins. "They lived and cohabited together as husband and wife from the date of their said marriage until about the 20th day of September, 1886, when they separated, and have since lived apart from each other." The referee found, viz.. "Between the months of April and October, 1886, the defendant was guilty of the various acts of cruelty, violence, and abuse of the plaintiff as the same are alleged in the complaint; that such violence and abuse was without cause or provocation on the part of the plaintiff, and thereby the plaintiff was rendered fearful for her personal safety, alarmed at defendant's violence, and her life rendered miserable and intolerable. About the 20th day of September, 1886, the plaintiff, by the order and direction of defendant, left Brooklyn, where they then were, and returned to her father's house in Tompkins county; the defendant telling her not to write to him, as he would not open her letters if she did." In October, 1886, the defendant returned to his home in Moravia, where his residence was. The referee found, viz.: "The defendant, at the times when he exercised such violence, cruelty, and abuse above referred to in 1886 upon the plaintiff, was not insane, irresponsible, or unconscious of the nature, purpose, or effect of his conduct, though during the same period he was often stupified by the use of morphine, cocaine, and spirits, and by reason of such excesses his memory was affected, his mind disturbed, and he became jealous, passionate, and violent." "(6) The plaintiff has not condoned the offenses aforesaid, or forgiven the defendant for his cruelty and abuse towards her. (7) The defendant owns property, real and personal, of the value of eight thousand dollars. (8) The defendant is a physician and surgeon, and has been engaged in practice of his profession about twenty years. Prior to his contracting the morphine and cocaine habit, he enjoyed a large and lucrative practice. He is now apparently cured of the habit, restored to health, and has resumed the practice of his profession." It seems to be conceded by the defendant's counsel that "most of the allegations in the complaint were proven." However, he claims "the defense was that the defendant, being afflicted with disease, had taken morphine to alleviate his pain, and thereby acquired the habit of using it, or the disease known as 'morphia;' and that to cure himself of that habit or disease he had resorted to the use of cocaine, a new medicine claimed to be a specific cure, which rendered him irresponsible for his acts, and that it was while in this deplorable condition that the acts complained of were committed." Judgment was entered on the report, and an order for $150 additional allowance as counsel fees was granted, and defendant appeals.

    Argued before HARDIN, P J., and MARTIN and MERWIN, JJ.

    A. P. Smith, for appellant. Almy & Bouton, for respondent.

    HARDIN, P. J. After a careful and considerate perusal of the evidence found in the appeal-book, we are of the opinion that the findings which were made by the learned referee are in accordance with the weight of the evidence, and that it is our duty to accept the same. Several requests were submitted by the defendant to the referee for special findings, and among them were the two following, found by the referee: "That from the time of the marriage

until September 20, 1886, they lived and voluntarily cohabited as husband and wife; that on the last night of their so living together they had sexual intercourse, and that it was the voluntary act on the part of the wife." The referee refused to find "that when the alleged misconduct and acts of cruelty and inhumanity were committed the defendant was of unsound mind." And he also refused to find "that when the alleged misconduct and acts of cruelty and inhumanity were committed the defendant was insane." He was asked to find "that by such cohabitation and sexual intercourse, voluntary on her part, she condoned and forgave the defendant's alleged acts of cruelty and inhumanity and of misconduct." Such request was not found.

1. As there was a conflict in the evidence upon the subject of whether or not, when the acts of cruelty and inhumanity were committed, the defendant was insane, and as we are of the opinion that the evidence warranted a refusal to find in accordance with the request, there was no error committed by the referee by such refusal. The same observation may be made in respect to the referee's refusal to find, when such acts were committed, the defendant was "of unsound mind." *Porter* v. *Smith*, 7 Civ. Proc. R. 195.

2. Although the referee found that there was sexual intercourse on the 20th of September, 1886, between the parties, he refused to find as a matter of fact that the plaintiff thereby "condoned and forgave the defendant's alleged acts of cruelty and inhumanity and of misconduct." There was testimony in the case to the effect that she never in fact or intentionally forgave the defendant's acts of cruelty and inhumanity. Although the act of sexual intercourse was some evidence upon the subject of forgiveness or condonation, it was not conclusive. *Reynolds* v. *Reynolds*, 4 Abb. Dec. 35, 37.

3. Nor do we think the act of sexual intercourse was, as a matter of law, a condonation of the antecedent acts of cruelty and inhumanity. In section 1758 of the Code of Civil Procedure it was provided: "The plaintiff is not entitled to a divorce, although the adultery is established. * * * (2) Where the offense charged has been forgiven by the plaintiff, the forgiveness may be proved, either affirmatively or by the voluntary cohabitation of the parties, with the knowledge of the fact." The provision found in that section does not relate to an action of the character of the one before us. Section 1762 of the Code of Civil Procedure provides for an action "to procure a judgment separating the parties from bed and board * * * for either of the following causes: (1) The cruel and inhuman treatment of the plaintiff by the defendant; (2) such conduct on the part of the defendant towards the plaintiff as may render it unsafe and improper for the former to cohabit with the latter; (3) the abandonment of the plaintiff by the defendant; (4) where the wife is plaintiff, the neglect or refusal of the defendant to provide for her." But there is no provision in the statute declaring that cohabitation or sexual intercourse shall work a forgiveness or condonation of antecedent acts of "cruel and inhuman treatment." Besides, the circumstances disclosed in the evidence indicate a deliberate intent on the part of the defendant to abandon the plaintiff from and after the 20th of September, 1886, and they also indicate "the neglect or refusal of the defendant to provide for her." We are of the opinion that the evidence taken before the referee was entirely adequate to support the conclusion reached by the referee. *Waltermire* v. *Waltermire*, 110 N. Y. 185, 17 N. E. Rep. 739. The facts and circumstances disclosed in the evidence "made her life miserable, and rendered it unfit that she should live with him, and impossible for her to do so with any sense of self-respect, or with any comfort." See opinion of DANFORTH, J., page 187, of the case just cited. We have looked carefully through the opinion of the learned referee upon the merits of the controversy as well as upon the legal questions presented, and we are satisfied the opinion is correct, and it has our approval. We have also looked at the various rulings made by the referee during the progress of the trial, to which our attention has been directed by the learned

v.5N.Y.s.no.3—24

counsel for the appellant, and we are of the opinion that there was no error committed calling for an interference with the report of the referee. Section 1003, Code Civil Proc.

4. At the special term, where the report of the referee was confirmed, an order was made granting the plaintiff an additional allowance. The appeal is before us from that order. We find nothing satisfactory in the case upon which the order can stand. Code Civil Proc. §§ 3252, 3253; *Beadleston* v. *Beadleston*, 103 N. Y. 404, 8 N. E. Rep. 735; Code Civil Proc. § 1769. We therefore think the order, so far as it grants an extra allowance of $150, is erroneous, and the order should be modified by striking such allowance of $150 therefrom. Judgment and order of confirmation affirmed, with costs. The allowance of $150 for counsel fees in the order of the 19th of June, 1888, stricken out, without costs to either party. All concur.