In the Matter of the Estate of JOHN P. KELLAS, Late of the Town of Malone, Franklin County, New York.

JEAN M. ELDREDGE, Individually and as Administratrix with the Will Annexed, etc., of JOHN P. KELLAS, Deceased, and PAUL M. CANTWELL, as Special Guardian of LEROY M. KELLAS, Appellants; ANNA G. KELLAS, Respondent.

Third Department, March 8, 1939.

*Moore & Herron* [*George J. Moore* of counsel], for the appellant Jean M. Eldredge, individually and as administratrix, etc.

*Paul M. Cantwell*, special guardian for LeRoy M. Kellas, appellant.

*John W. Genaway* [*William L. Allen* of counsel], for the widow, Anna G. Kellas, respondent.

BLISS, J. The Surrogate's Court has sustained the widow's election to take her share of the estate as in intestacy (Dec. Est. Law, § 18). The will cut her off, except that it directed that her dower interest in decedent's real estate should be paid to her in cash out of the estate. The appellants claim that the widow has no right of such an election because she had abandoned the decedent.

Decedent and his widow were married in 1914. At that time he was sixty years of age and she forty-two. He had been married before and had three grown children. It was her first venture in matrimony. He was a lawyer of considerable standing and in comfortable circumstances. After the marriage they resided in his

home. The house was a large, private residence containing approximately fifteen rooms with a large lawn, garden and garage, not elaborately furnished, but apparently in such comfort and taste as would be appropriate to a private establishment of that consequence and a man of the decedent's position and financial condition in the community. In December, 1918, they went west to spend the winter. At the time they left home and started on the trip, decedent's daughter and his son, who was also a lawyer and had but recently married, and the son's wife, lived in the same household with them. Decedent and his wife arrived in New York city on May 11, 1919, on their return from the west and remained there until the morning of the twenty-third, when they came together to Albany. He left her in the Albany station, giving her a ticket to Malone. She remained in the station until the next train to Malone, which was eleven P. M., and proceeded on home alone. She arrived there the next morning. He apparently went to the home of a daughter who then lived in Albany. She says that upon arriving home she was met at the door by the son who told her that he had bought the house and asked her how soon she could take her belongings out of it; that she would find her trunk at the Franklin Hotel, and to get her things out of the house or he would take them out. She went to the Franklin Hotel, where she found her trunk and some clothing in a third-floor apartment consisting of two small bedrooms meagerly furnished, much too small to accommodate her personal belongings and few articles of household furnishings. During their absence on the trip decedent had conveyed the house to his son without his wife's knowledge, and the deed had been put on record at five P. M. the day before her return to Malone. The son's version was that when his stepmother returned to her home he told her that he owned the house and at the father's request he had engaged rooms at the Franklin Hotel for her and him, that his father expected to be there soon and wanted her to go there and live with him. She replied she would not go there but was going back to her home at Ogdensburg and consult her attorney. He also says that she returned to Malone a couple of days later, packed her personal effects and left her former home on May twenty-seventh. The day before, that is, on May 26, 1919, the son delivered to her a letter from his father dated May 26, 1917, forbidding her to leave him or to go away from the place of his abode, which was the Franklin Hotel in Malone, and directing her to go there and occupy the rooms which he had provided there for them to live in and that as soon as he reasonably could he would be there with her. She left Malone on May twenty-eighth and she and her husband never lived together or had any communication thereafter. Decedent never went to

the Franklin Hotel to live. She lived for several years at Ogdensburg with her parents and then took a position with another lawyer in Malone.

Of course, there is much of the situation that must be left to the imagination, and we may not speculate thereon. The question for us to determine is whether there has been established such an unjustifiable abandonment by the wife of the husband as would constitute legal grounds for a separation. It is as much the duty of the husband to provide the wife with a home in keeping with his condition in life and to occupy it with her as it is her duty to live there with him. This husband and wife parted in the railroad station in Albany. She believed she was returning to their home in Malone. Upon entering the home she was met at the door and then told for the first time that it was no longer home to her but that her husband had made provision for her in a local hotel. The accommodations which the son had obtained at the hotel were in no way consonant with her husband's social position or financial condition. They did not constitute his home. As a matter of fact he never occupied them. The letter which was delivered to her by the son, regardless of whether it was written at that time or two years before and had been kept awaiting a favorable opportunity for its delivery, was self-serving and not written in good faith. It is typically legalistic in form and obviously prepared with an eye to defense of any action which she might bring. It is quite apparent that the father and son were acting in concert to and did drive the wife and stepmother out.

Some point is made of the fact that the wife never brought action against her husband to compel support. There may be many reasons for this, not the least of which might be the wife's distaste for the unpleasant notoriety of a lawsuit. Also she may have had confidence in her ability to care for herself. On the other hand, the husband never made any offer to furnish her with a home such as he was content to occupy himself. Nor did he see fit to seek a legal determination which would have established beyond a question his relief from his obligation to provide for his wife. Such an action would have disposed of any right of election to a share in his estate. He was a lawyer and knew the effect of a judgment of separation in his favor. But his legal representatives now seek to establish that which he declined to essay. The inferences are fully as strong against him as against his widow.

There is but little law involved here. The abandonment must be such as would have entitled him to a legal separation (*Matter of Sadowski,* 246 App. Div. 490), and must have been without justification. (*Williams* v. *Williams,* 130 N. Y. 193.) The whole

question here is whether the wife was justified in returning home instead of going to the Franklin Hotel to live. It is extremely important that her husband was not then at the Franklin Hotel and never did make his home there. Under these circumstances he could not expect her to live there. A husband has the right to select his own residence and to provide such support and necessaries as he and his wife have been accustomed to and he is able to provide. (*People* v. *Pettit*, 74 N. Y. 320.) This husband did not provide a home such as he and his wife had been accustomed to or such as he was able to provide or, indeed, any home such as he himself was content to accept and occupy. We think that no such abandonment has been shown as would justify us in holding that this widow had lost the right to share in her husband's estate. (*Matter of Lorch*, 254 App. Div. 680; affd., 279 N. Y. 574.)

The decree should be affirmed, with costs to the respondent payable out of the estate.

RHODES, McNAMEE and CRAPSER, JJ., concur; HILL, P. J., dissents, with an opinion.

HILL, P. J. (dissenting). The executor and the special guardian of an incompetent legatee appeal from a decree of the Franklin County Surrogate's Court which determines that Anna G. Kellas is entitled to share in the estate of John P. Kellas, deceased, as in intestacy and against the provisions of the will.

Appellants assert that claimant abandoned her husband in 1919 and has no election under section 18 of the Decedent Estate Law because of the provisions of subdivision 5 thereof: " No wife who has abandoned her husband shall have the right of such an election." The parties were married in November, 1914. Decedent had been married previously and his three children by the former wife resided with the parties at 90 West Main street, Malone, N. Y., until December, 1918, when claimant and her husband went to Arizona for the winter, returning to New York city May 11, 1919, going from there to Albany together on the twenty-third. He remained in Albany for medical treatment; she went to Malone on the following day and to her home at 90 West Main street, where she learned from LeRoy M. Kellas, a son of the decedent, who had married while his father and claimant were in Arizona, that the father, a short time previous, had conveyed the premises to him and that it was arranged that claimant and her husband should reside at the Franklin Hotel, located on the same street, where a suite consisting of a living room, a bed room and bath had been leased. Claimant went to the hotel, found her trunk and a few of her personal belongings, and left for her father's home in Ogdens-

burg. She returned to Malone and had a further conversation with the son on May twenty-sixth, during which he delivered to her a letter from her husband.

" MALONE, N. Y., *May* 26, 1917.

" DEAR ANNA: It has come to me that you contemplate leaving me and are now arranging to that end. I forbid you to do any such thing or to go away from the place of my abode which is the Franklin House in Malone and I direct you to at once go there and occupy rooms I have provided there for you and I to live in and as soon as I reasonably can I will be there with you. I want to remain here until I get another ' Shot ' from an expert who I am told is here. Or if you prefer you may come and stay with me here. But, I think perhaps it will be quite as pleasant at the Franklin where you can have pleasant association with Mr. Moody. Of course you cannot expect me to support you at any place other than at such reasonable place as I may choose and I of course will not do so and I am sure The Franklin will be a pleasant place for us to live. Hoping you will see it in the true reasonable light I am

" Your Husband,
" J. P. KELLAS."

On the same day she returned to her father's home at Ogdensburg and never again had communication, directly or indirectly, with her husband. She remained in Ogdensburg until January, 1924, then obtained employment with an attorney in Malone and resided there until after the death of her husband, which occurred on June 18, 1934.

Her husband continued to pay the rent of the rooms in the Franklin Hotel for some months after her departure. His will was dated January 3, 1924, and was republished through the execution of a codicil on May 17, 1934. The only mention of the claimant was in the tenth paragraph, in part as follows: " I have not in this will provided for the payment of anything to my present wife Anna Grace, she having without due cause or provocation abandoned me when suffering from illness and persisted and continued in such abandonment thus in my judgment forfeiting any claim to any bounty from me." The clause further provided that the value of her dower interest in his real estate should be paid to her, the amount to be charged against his estate as a debt.

It is unquestioned that the letter quoted was in her husband's handwriting and was delivered to her on May 26, 1919. It bears date exactly two years earlier. This, together with the fact that it is dated at Malone, while the husband was in Albany, is stressed by respondent's counsel. I see little significance in these circumstances beyond what is obvious, that decedent's children, and

particularly the son, were not unmindful of their own financial interests in the estate of the father, and probably did not attempt to make more smooth the marital path of their father and his second wife. The conveyance of the premises at 90 West Main street, without the knowledge of claimant, was further evidence of the foregoing and possibly of a partial estrangement between claimant and her husband. Conditions similar to those here recited are not rare and, while distressing, do not furnish grounds for a legal separation. Claimant's continued absence following her husband's invitation to live at the hotel could only be justified and excused so as to entitle her to an election upon grounds sufficient for her to have obtained a judgment of separation. (*Matter of Sadowski*, 246 App. Div. 490.) There is an issue of fact as to the spaciousness of the apartment provided in the Franklin Hotel, but the surrogate found, "from the testimony it appears that there is no question but what the said hotel was of a character suitable to the position of the parties." The rooms opened onto a porch and the dimensions seem to have been reasonably adequate. Lack of spaciousness of the quarters would hardly justify claimant's continued absence for fifteen years. In the letter quoted she was given the option to stay at that hotel or return to Albany and stay with her husband until he came to Malone. The husband may have acted wisely in arranging a home for himself and his wife away from the residence where his daughters together with the son and a newly-married wife resided. General rumor has it that too many governing heads in a single household cause distressing dissensions. In any event, he had a right to select the domicile, and if it was reasonably adequate the leaving by claimant amounted to abandonment. Nothing is shown which excused claimant's long absence. The order should be reversed and the prayer of the petition denied.

Decree affirmed, with costs to the respondent, payable out of the estate.