In the Matter of the Estate of MARY V. CHANDLER, Deceased.

Surrogate's Court, Kings County, March 4, 1941.

*Albert Martin Cohen*, for Albert Martin Cohen and Gladys Chandler, as executors, etc., petitioners (for settlement of their account).

*Benjamin Gross* [*James I. Cuff* of counsel], for James R. Chandler, husband, objectant (to account of executors).

*Samuel A. Pease*, for Gladys Chandler, executrix, individually.

*Arthur Weiner*, special guardian for Randolph Chandler, son of decedent, legatee.

*Samuel B. Rochford*, for Wilbert B. Blanche, as attorney in fact for Gwendolyn Clarke, daughter of decedent, legatee.

WINGATE, S. It is proverbial that hard cases make bad law. The learned referee to whom the issues in this proceeding were submitted for evaluation obviously deemed that a validation of the objections of the surviving spouse of this decedent would be inequitable, which may, in part at least, account for his attainment of a result with which this court is regretfully compelled to disagree.

As demonstrated by the record, the parties intermarried in or about the year 1910. Both were colored. The decedent was more or less continuously employed as a domestic or day worker for the entire period from the inception of the marriage to the time of her death. The employment of the husband was less regular. Apparently he worked intermittently at the carpentry trade, secured a license as a real estate broker and earned a meagre and irregular amount in this occupation and, for a time, was on the W. P. A. rolls.

If the testimony adduced on behalf of the accountants is credited, and the referee obviously did so, the husband was essentially of the type to whom the ancient anecdote is applicable that his conception of an ideal gift for his wife was a nice large washtub. There is, to be sure, much testimony contradicting this picture of his nature and characteristics, but the referee has credited the former and it should, accordingly, not be rejected in view of his superior opportunity to see and evaluate the credibility of the witnesses. (*Boyd* v. *Boyd*, 252 N. Y. 422, 429; *Matter of Murtha*, 259 id. 456, 458; *Matter of Arkenburgh*, 38 App. Div. 473, 478; *Jankowski* v. *Azaro*, 246 id. 557.)

Accepting, then, the version of the marital relations of the parties from the inception of the marriage until the final separation, which occurred on or about August 25, 1937, which is most unfavorable to the husband, it will be assumed that he was lazy and shiftless and given to occasional drunkenness; that he left the decedent on several occasions and that there was frequent bickering between them respecting financial matters. The court cannot, however, accept the implied finding that the husband did not contribute to the support of the decedent during this period to the extent that his resources permitted, since there is no evidence in the record which would sustain such a determination. To be sure, testimony was adduced from a number of visitors to the household

that they never saw him give her money, but this is probative of nothing and could be stated with equal or greater truth by the court or the learned referee himself. On the other hand, other witnesses, introduced on behalf of the husband, testified categorically that they had seen him do so and excerpts from an examination of the decedent before trial indicated that she admitted that he had given her ten dollars a week. In any event, the burden was on the executors to demonstrate his failure in this regard and there is nothing in the record which constitutes proof thereof.

In the view of the composite legal situation which is adopted by the court, this is, however, all quite immaterial. The parties unquestionably lived together as man and wife for the better part of thirty years during which period they raised three children. He did not give her as much money as she thought she should receive and they had frequent bickerings on the subject, which is, perhaps, not a wholly unique marital experience. They quarreled and made up and repeated this process time after time. On each of these occasions, up to the final separation in August, 1937, however, complete reconciliation and resumption of marital relations occurred and it was apparently agreed between them on such reconciliations to permit by-gones to remain such.

Upon this demonstration, there was no little basis for the contention advanced by counsel for the husband that the last demonstrated reconciliation, which was uncontrovertibly established by the testimony of a disinterested probation officer to have occurred in January, 1937, effected a condonation of previous offenses with the result that the cumbering of the record with their recital was a useless waste of time, if not more. (*Doty* v. *Rensselaer County Mutual Fire Ins. Co.*, 194 App. Div. 841, 843, 844; *Reynolds* v. *Reynolds*, 4 Abb. Dec. 35, 36; *Cox* v. *Cox*, 5 N. Y. Supp. 367, 369; reported by memorandum only, 52 Hun, 613; *Beauley* v. *Beauley*, 199 App. Div. 280, 281; *Bishop* v. *Bishop*, 82 Misc. 676, 678; *Lazarczyk* v. *Lazarczyk*, 122 id. 536, 539; *Ryan* v. *Ryan*, 132 id. 339, 342; *Matter of Sidman*, 153 id. 735, 737.) Condonation is favored in the law (*Galusha* v. *Galusha*, 116 N. Y. 635, 643) and whereas cohabitation subsequent to the commission of acts which would warrant a judgment of separation does not, as is the case with known adultery, constitute condonation as a matter of law, it raises an inference thereof (*Reynolds* v. *Reynolds, supra; Cox* v. *Cox, supra*) which, when not neutralized, is adequate for a determination that it has occurred.

The cause of the final rupture in the relations of the parties was obviously serious trouble which arose in the summer of 1937 between the husband and the son of the parties. Concerning

this, it was testified that the decedent stated that " Mr. Chandler had tried in some way to do something to Randolph and that was the last thing, she couldn't have him stay there." The parties accordingly agreed to disagree. The decedent arranged for the husband to meet her at her attorney's office and they there executed a separation agreement which had been prepared by this attorney.

This separation agreement was introduced into evidence. After the usual recitals, it provides in stereotyped form that the parties shall live separately and that neither shall molest the other. It stipulated, however, that " nothing herein contained shall be construed to prevent the first party [the husband] from bringing any action he may be advised to bring with reference to any claim he may allege to have to any property owned by the second party [the wife] and this agreement is without prejudice to any such action."

The final paragraph is the one upon which the learned referee apparently places chief reliance for the result which he has attained. This reads: " 4. The party of the second part recognizes that the party of the first part has no earning capacity and by reason thereof no provision is hereby made for the support and maintenance by the party of the first part, of the party of the second part and the infant son of said parties, and the party of the second part has hereby paid to the party of the first part the sum of One hundred (100.00) Dollars, receipt whereof is hereby acknowledged by the party of the first part, to cover his expenses in having moved from the premises 23 Jefferson Avenue, Borough of Brooklyn, City and State of New York." This agreement was duly executed and acknowledged by both parties.

That the recitals in the quoted fourth paragraph corresponded with the facts is amply demonstrated. At the time of the execution thereof, the husband was over sixty years of age, unemployed and had no property, having been discharged from the W. P. A. the previous June. The decedent on the other hand was the record owner of the real property referred to in the agreement, from certain rented portions of which she received an income approximating seventy-five dollars a month. That she also possessed stock and a mortgage is indicated by the fact that at the time of her death, some ten months later, she owned property of this variety which, as disclosed by the accounting schedules, was worth between $2,000 and $3,000. Finally, an issue exists as to her beneficial ownership of a bank account showing a balance of $1,076.22 which she transferred to her daughter on July 20, 1937, at the time the final trouble was brewing.

The will of the decedent disinherited her husband. He has duly filed a notice of election pursuant to section 18 of the Decedent Estate Law and objections have been interposed to the account by reason of a denial of its effectiveness and of his right to exemptions under section 200 of the Surrogate's Court Act and for certain alleged errors and omissions in the account. It is these issues which were submitted for trial to the learned referee. His determination is to the effect that the surviving spouse is debarred from exercising a right of election or claiming exemptions by reason of abandonment of, and failure to support, the decedent; that in consequence he possesses no interest in the estate and, therefore, lacks the status to interpose the other asserted objections to the account. This determination is primarily predicated on the conclusion of the referee that the separation agreement between the parties is void in its entirety by reason of its noted inclusion of a stipulation exonerating the husband from any obligation to support his wife.

It is entirely true, as the learned referee notes, that section 51 of the Domestic Relations Law provides that the obligation of a husband to support his wife is not capable of nullification by their private agreement. The limitation on its invalidity is, however, noted in *Manufacturers Trust Co.* v. *Gray* (278 N. Y. 380, 386) as follows: " We have said that though an agreement by a wife to exonerate her husband from his obligation to support her may be void ' in the sense that so long as it remained executory it could not be enforced against her,' yet the wife has the right to perform it and having done so cannot undo what has been done by recalling what she had paid or requiring the husband to reimburse her. (*Third Nat. Bank* v. *Guenther*, 123 N. Y 568, 576; *Pierce* v. *Pierce*, 9 Hun, 50.) "

In other words, although such an agreement is void to the extent that enforcement of its terms for the future will not be permitted by the courts, it is entirely valid in so far as it has actually been executed. The authorities cited by the referee and the opponents of the husband, with the possible exception of *Matter of Kopf* (73 Misc. 198), decided in 1911 by the then surrogate of Richmond county, are consonant with this conception. To the extent, if at all, that the excepted case is disconsonant with this view, it is unacceptable as an authority.

In reality, however, the technical validity or invalidity of the written agreement itself is wholly immaterial in the evaluation of the legal results of the departure of the husband and his subsequent failure to contribute to the support of the decedent if there actually was such a failure. Its value, which is of transcendent

importance in the attainment of a correct result, lies in its conclusive demonstration that departure by the husband from the house owned by the wife was with the consent if not, indeed, in consequence of the compulsion, of the latter and that she did not look to him for support. It is one of the elementary maxims of the law that *volenti non fit injuria*. The import of the maxim is, that that which, unauthorized, would amount to wrongful injury loses such character if the person suffering the disadvantage or injury consents to the act. (Bouvier Law Dict.; see, also, *Riggs* v. *Palmer*, 115 N. Y. 506, 514; 67 C. J. p. 270, and authorities cited.)

It is well established that to effect a forfeiture of elective rights for abandonment or non-support under section 18 of the Decedent Estate Law, a demonstration is required which " would have been sufficient to secure a decree of judicial separation while both parties were alive." (Butler, Surrogate Law & Practice, § 2297; *Matter of Kellas*, 256 App. Div. 425, 427; *Matter of Green*, 155 Misc. 641, 645; affd., 246 App. Div. 583; *Matter of Fingerlin*, 167 Misc. 770, 772; *Matter of Maiden*, 284 N. Y. 429, 432.)

To procure a judicial separation on the ground of abandonment, or to forfeit elective rights for the same reason, the departure must be without the consent of the one who is left behind, since a separation pursuant to mutual consent is not a wrong and does not result in the forfeiture of any rights. (*Powers* v. *Powers*, 33 App. Div. 126, 127; *Matter of Lorch*, 254 id. 680; affd., 279 N. Y. 574; *Matter of Brown*, 153 Misc. 282, 288; *Matter of Stolz*, 145 id. 799, 801.)

The obligation of a husband to support his wife, even where she seeks it, is only in accordance with his means. (*Garlock* v. *Garlock*, 279 N. Y. 337, 340; *Keller* v. *Phillips*, 39 id. 351, 354.) In this, as in any other question respecting the forfeiture of elective rights by a husband whose marriage has been proved to have come into valid existence, the burden of proof is imposed upon those contending that such rights have ceased to exist. (*Matter of Maiden*, supra; *Matter of Green*, supra; *Matter of Vogel*, 251 App. Div. 741; *Matter of Wheeler*, 156 Misc. 830, 831; *Matter of Chamberlain*, 161 id. 880, 881.) In the present record there is not a word of proof to indicate that the husband did not in fact contribute to the support of the decedent, or, if he did not, that he possessed any means from which it was possible for him to do so.

Finally, and presently most important, however, is the demonstration that the decedent did not expect or desire him to do so. In this connection, the observations of Mr. Justice SHIENTAG in *City Bank Farmers Trust Co.* v *Miller* (163 Misc. 459, 468; affd., 253 App. Div. 707) are of especial interest: " True, O'Brien

did not support his wife; in fact, she supported him and in addition gave him large sums of money. But it may hardly be said that there was neglect or refusal to support, where the wife never expected or demanded it. I hold, therefore, that the husband has a right of election to share in the general estate of his deceased wife * * *."

Whereas an appeal was presented to the Court of Appeals from certain determinations of the decree in the case last cited (278 N. Y. 134), this was not among their number and the opinion above observed (p. 143) that the husband " duly elected to take the share of her estate which he was entitled to receive pursuant to section 18 of the Decedent Estate Law."

In the case at bar the departure of the husband was with the consent of the wife, hence it did not amount to an abandonment within the intendment of subdivision 4 of section 18 of the Decedent Estate Law. There is no proof in the record that he failed to provide support for her, and even if there were, this would not result in a forfeiture of his elective rights since it has been demonstrated that such non-action on his part was pursuant to her consent. It follows, since he was disinherited in the will, that his election to take his intestate share in contravention of its terms must be validated.

Since, for like reasons, he does not come within the description of subdivision (c) of section 87 of the Decedent Estate Law, he is not one " who cannot inherit as a distributee " or " claim any rights against the estate of a deceased spouse who has died testate " under the final paragraph of section 200 of the Surrogate's Court Act, and his objection addressed to the failure to accord him the family exemptions allowed by that section must be sustained.

The learned referee refrained from passing on the other objections to the account by reason of his conclusion that the objector possessed no rights in the estate. Since the court is unable to concur in this conclusion, the merit of the remaining objections remains for evaluation. Were this possible from the record as heretofore adduced, the court would, of course, prefer to adopt this course rather than to remit the matter to the referee for further consideration. Unfortunately it is not.

The first objection complains of the failure to include among the assets of the estate the avails of a certain account with the Brooklyn Savings Bank which was transferred by the decedent to the accountant on July 20, 1937. It is the contention of the objector that this was merely a colorable and illusory transfer by which the decedent attempted to divest herself of its record ownership in fraud of his rights. At pages 14 to 15 of the record proof was tendered in substantiation of this position and was

excluded. In the opinion of the court this exclusion constituted prejudicial error. The Court of Appeals has determined (*Newman v. Dore*, 275 N. Y. 371, 379) that whether or not a transfer of property by a spouse during life will have the effect of defeating elective rights therein will depend on whether the transferor " has in good faith divested himself of his property or has made an illusory transfer " thereof.

The only conceivable question which might arise in this connection is whether this court possesses the statutory authority to direct a recovery in the event that he shall succeed in sustaining the burden of proof resting upon him of demonstrating that the transfer was, in fact, illusory within the definition of *Newman v. Dore* (*supra*). Upon the situation disclosed in the present record, the court is of the opinion that this question must be answered in the affirmative. The transferee was the present accountant and the court possesses unquestionable personal jurisdiction over her. If the transfer was illusory, the ownership of the fund probably remained in the decedent as a matter of law, or if it did not, the executrix at least received a chose in action for its recovery which, by reason of her fiduciary relationship to the surviving spouse, she was under obligation to enforce for his benefit. Her failure so to do would consequently subject her to surcharge on his objection since her dereliction in the performance of her fiduciary duty has resulted in loss to him. (*Matter of O'Flyn*, 174 Misc. 1025, 1027, 1028.)

Finally, the situation disclosed in this aspect is clearly within the concept of the jurisdiction of Surrogates' Courts as enunciated in *Matter of Raymond* v. *Davis* (248 N. Y. 67, 72) authorizing them to adjudicate " all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires." (Surr. Ct. Act, § 40.) The only alternative would be to compel the objector to seek his remedy in this single particular in the Supreme Court; but " to remit the claimant to another forum after all these advances and retreats, these reconnaissances and skirmishes, would be a postponement of justice equivalent to a denial. If anything is due him, he should get it in the forum whose aid he has invoked." (*Matter of Raymond* v. *Davis, supra*.)

The matter will be remitted to the learned referee for the purpose of passing on the additional objections to the account and further proceedings in accordance with this opinion.

Proceed in conformity herewith.