In the Matter of the Estate of ANNE E. GRAU WANDMAYER, Deceased.

Surrogate's Court, New York County, April 22, 1942.

*Prime Bros. & Duffy*, for the petitioner.

*Kremer & Leavitt* [*Samuel Leavitt* of counsel], for the respondent.

FOLEY, S.   In this proceeding the administratrix with the will annexed seeks a determination that Alex Grau Wandmayer, the husband of the testatrix, is without lawful right to elect to take his intestate share of the estate under the terms of subdivision 4 of section 18 of the Decedent Estate Law.   The husband was expressly disinherited by the provisions of the will.   He filed his notice of election to take against its provisions.

The fourth subdivision, just referred to, reads: " No husband who has neglected or refused to provide for his wife, or has abandoned her, shall have the right of such an election."

On the one hand, the legal representative of the estate contends that the husband lost his right of election because of the statutory prohibition, in his abandonment of the testatrix and his neglect and refusal to provide for her.   He is a resident of Poland and has appeared here by his attorneys-in-fact to controvert the charges made against him and to seek to enforce his right to take against the terms of the will.

The parties were married in New York city on December 12, 1911.   The husband, who is of Polish descent, was born in territory which was then a part of Austria-Hungary.   He was an official of the consulate of that nation in New York city.   The parties lived together with but one extended period of separation, until May 23, 1931.   This period of separation was an enforced one beginning in 1917 at the outbreak of the first World War, when the respondent was required to return to his own country.   After the war he came back to New York sometime in 1920 or 1921.   He subsequently became an American citizen and apparently determined to make his permanent home in New York city.   During the ten years following his return to New York in 1920 or 1921, he was not able successfully to establish himself in permanent gainful employment.   Two positions with banking institutions were of comparatively short duration.

Early in the year 1931 he decided to go back to the place of his birth which was then a part of the Republic of Poland.   He sailed

from New York on May twenty-third of that year and has since continuously resided in Poland. His wife remained in New York. The reason given by him to her for his departure was that he intended to seek a pension from the Polish government. The circumstances surrounding his departure as revealed by the evidence justify the conclusion that his expressed reason was a mere pretext and that his conduct constituted an abandonment within the meaning of section 18 of the Decedent Estate Law. As the trier of the facts the surrogate further holds that the abandonment was unjustified and without the consent of the decedent. (*Williams* v. *Williams*, 130 N. Y. 193, 197; *Matter of Maiden*, 284 id. 429; *Risk* v. *Risk*, 202 App. Div. 299.)

Under the provisions of the section, the conduct alleged to be the basis of a denial of the right of election is to be tested by the rulings applicable to an action for a separation between living parties. In the explanatory note to the section, which was recommended by the Decedent Estate Commission and was printed in the legislative measure, it was stated: " Such an abandonment or refusal or neglect to provide, is intended, as our courts uphold as sufficient to sustain a judgment of separation under section 1161 of the Civil Practice Act." (*Matter of Maiden, supra,* citing with approval *Matter of Sadowski,* 246 App. Div. 490, 492.) This note illuminates the legislative intent. Certainly the misconduct of the husband here would have justified a judgment of separation against him in an action brought by the decedent in her lifetime.

The letters written by both the parties leave no room for doubt upon the finding of an actual abandonment by the husband. The oral testimony lends additional support to that conclusion. The decedent in a letter written to her husband in 1936 said: " When you left U. S. A. on May 23, 1931, you did not plan to take me with you to Poland but you promised you would return in two or three months. I know you did not tell me the truth." In a letter written by the husband, dated December 12, 1932, he wrote to a friend who is an attorney: " I know that she is bitter about my departure. But, I did not desert her. I tried unhumanly to land over there somewhere and I am still fighting hard to accomplish something. * * * I have left, because I could not think of being supported by her — she is not rich enough for that." The husband was at least truthful in the latter statement since his wife was possessed of a relatively small amount of property which at her death amounted to approximately $18,000. The distinction attempted to be made by the husband in this letter between departure and desertion is only one of degree of speed. A deserter is a deserter whether he runs or walks away from his post.

The present contention of the husband's attorneys that he left the marital home in New York with his wife's consent and with an intention to pay a temporary visit to Poland is completely refuted by the evidence. When he departed from this country in 1931 he took with him all his securities. He left no property behind him here. His letters showed that he was disappointed in not obtaining a position here. Undoubtedly he had strong attachments to his native land. His naturalization as an American citizen was of little consequence to him. Soon after his arrival in Poland he acquired what he called a home. He entered into and continued the activities of a permanent resident, became enthusiastic and sentimental over the culture of that country and the business opportunities there and their contrast with America. His intent at the time of his departure in 1931 was plainly to effect a permanent separation and abandonment of his wife accompanied by a fixed and resolute determination not to return to America. His promise to return made to his wife at the time of his departure was, therefore, sheer deceit. The finality of his decision to leave this country forever and to abandon his wife is emphasized in his own words in a letter written in 1936 in which he said: " I have burned all my bridges behind me and have irrevocably decided to stay here for good."

The additional reason that the husband made for leaving his wife was that he expected to find in Poland opportunities for financial betterment that he could not discover here. That this was mere pretext is apparent from the communications between the couple. He had taken an examination for the position of a court interpreter in New York. His high standing on the civil service list gave reasonable expectation of an early appointment. When his wife suggested that he return to this country to secure such a position at a lucrative salary he declined to do so. His attempted explanation in his letter demonstrates his difficulty in reconciling his then refusal with his previous excuses for leaving his wife. In addition he was compelled to resort to a malicious and unfounded reflection upon the courts of this State to the effect that he would have to " buy " his appointment as official interpreter.

Further contention is made on behalf of the husband that after his departure the wife unreasonably refused to go to Poland to live with him. It is urged that within a reasonable time after the separation he wanted her to live with him and she willfully refused her consent. The first suggestion that she make her home with him there was made by him in 1936, five years after his actual abandonment of her. The conclusion is inescapable from his letters and conduct and her own communications that his belated proffers were made in bad faith and under legal advice.

A husband, subject to the tests of reasonableness, has the right to select a new marital residence for both spouses. (*Matter of Kellas*, 256 App. Div. 425, 428; *People* v. *Pettit*, 74 N. Y. 320.)

His right to change his own domicile, if his duties to his wife are left out of consideration, is absolute. But in relation to the rights and obligations of the parties in their marital relations it is not absolute. It must be exercised with some respect to the welfare of the wife. Cases occur where the choice of a new domicile is so plainly unreasonable and improper, in reference to her health and welfare, that the selection of it, and an attempted enforcement of his general marital right to have her share it with him, would be such extreme cruelty as would justify her to decline to accompany him or to follow him to a new place of abode. " His wife's marital right and his duty as a husband would come in conflict with the exercise of his general right to choose his own domicile, if he attempted to exercise the right in such a way as would be utterly and grossly unreasonable because of the peril to her life and health, and perhaps because of her deprivation of other things essential to her welfare." (*Franklin* v. *Franklin*, 190 Mass. 349; 77 N. E. 48.)

Here the ordinary obligation of the wife to accompany the husband was nullified by the conditions which the husband attempted to impose. She was of advanced years and even before the time of his departure in 1931 had suffered from a heart condition which ultimately caused her death. His demand that she leave New York was, therefore, grossly arbitrary. It was likewise unreasonable to demand that she abandon the country of her birth. Despite these reasons which would have justified her remaining here, she offered in a letter to him to go to Poland if he would send her the necessary expenses. Her offer was ignored by him.

Upon this phase attempt has been made by counsel for the husband to show that he gave her the proceeds of an endowment policy of $1,000 on his life which was to have been used for the traveling expenses to Poland. His own letters and the records of the insurance company in evidence refute that claim. It was shown conclusively that the wife had paid all of the premiums upon the policy out of her own funds. The total of these premiums exceeded the amount of the insurance. If she was not the real owner of the policy, she had an equitable lien on the proceeds by reason of the payment of the premiums. (*McCarthy* v. *Prudential Ins. Co.*, 252 N. Y. 459.) He did no more than confirm her legal or equitable rights by authorizing the insurance company in writing to make absolute payment of the moneys to her.

Evidence of his invitation to her, not spontaneous or conciliatory in character and undoubtedly inspired by legal advice, is entitled

to little weight as indication of an honest desire on the part of the husband for his wife to rejoin him. Paraphrasing the language of Judge POUND in *Bohmert* v. *Bohmert* (241 N. Y. 446, 453), " Legal formulas are not always to be accepted as the equivalent " of a husband's disposition.

Under the circumstances here disclosed, the abandonment had become complete. The wife would have been within her rights had she refused categorically to accept the faithless invitation and to undertake such a drastic change in her mode of living.

From the time of his actual abandonment of her in 1931 for a period of eight years until her death in 1939 he never contributed to her support.

The surrogate finds that the husband is disqualified by the provisions of section 18 of the Decedent Estate Law from electing to take against the terms of his wife's will. By his misconduct and delinquency he has surrendered any right to participate in her estate.

Submit decree on notice accordingly.